197 A.2d 310 (1964)
Luigi VALLONE
v.
CITY OF CRANSTON DEPARTMENT OF PUBLIC WORKS. (two cases).
Luigi VALLONE et ux.
v.
CITY OF CRANSTON DEPARTMENT OF PUBLIC WORKS.
Ex Nos. 10510-10512.
Supreme Court of Rhode Island.
February 5, 1964.
*312 Louis J. Vallone, Edwards & Angell, Ronald R. Lagueux, Providence, for petitioners.
Christopher T. DelSesto, Jr., Asst. City Sol., for City of Cranston.
ROBERTS, Justice.
These are three petitions brought in the superior court for the assessment of damages resulting from the taking by eminent domain of certain easements in the land of the petitioners pursuant to P.L. 1927, chap. 1079, sec. 3, wherein provision is made for a trial on such petitions, at which the court "shall determine all questions of fact relating to the value of such * * * easements and the amount thereof * * *." The petitions were heard by a justice of the superior court, jury trial having been expressly waived, and thereafter a decision was entered in the first case for the petitioner in the amount of $500, in the second case for the petitioners in the amount of $2,273, and in the third case for the respondent. The petitioners are in this court prosecuting an exception to the decision in each case. Their other exceptions, being neither briefed nor argued, are deemed to be waived.
It appears from the record that Luigi Vallone, in part as an individual and in part jointly with his wife Libera hereinafter referred to as petitioners, acquired title to certain parcels of land lying on the easterly side of Atwood avenue in the city of Cranston through a series of conveyances that began in 1936. The parcels, all of which adjoin, together comprise a tract of land that is bounded on the west by said Atwood avenue for a distance of about 1800 feet, on the east by a body of water commonly known as Randall's Pond, on the north by land of the Roman Catholic Bishop of Providence used as a cemetery, and on the south by a highway known as Randall street.
It appears that petitioners caused a plat of this tract to be prepared designated "Pleasant View Industrial Sites" and dated March 1959. This plat, hereinafter referred to as the 1959 plat, was introduced into evidence by respondent along with testimony that it had been filed in the office of the commissioner of the department of public works for use by that department in planning and building public improvements. This plat reveals that beginning at a point in Randall street at the southerly boundary of the tract a strip of land 60 feet in width extends northerly into the tract, the westerly line thereof maintaining a distance of 200 feet from the easterly line of Atwood avenue. This strip extends northerly to a point about 200 feet south of the cemetery land where, turning westerly at a right angle, it extends to Atwood avenue. It appears from the plat that this interior strip, hereinafter referred to as the proposed street, is bounded on both sides by platted lots. There is no legend or notation on the plat indicating that this strip was intended to constitute a street.
On February 24, 1959 petitioners conveyed to W.J. Siravo, Inc. a parcel of land lying within the tract between Atwood avenue and the proposed street referred to *313 above. The description was by metes and bounds wherein it was noted that the lot was bounded northerly "on a proposed street sixty (60) feet in width" and again as bounded easterly "on a proposed street sixty (60) feet in width." No reference was made in the deed to the 1959 plat. The deed, however, in express terms gives the grantee "the right to use said proposed streets for all purposes for which streets and ways are customarily used."
In December 1959 and in January 1960 petitioners conveyed five more parcels of land lying between Atwood avenue and the proposed street. In each of these conveyances the lot was described by metes and bounds, and in four of such deeds one of the bounds was described as "along the westerly line of the proposed street," while in the remaining deed the lot was described as "bounding easterly on a proposed Street." In none of these deeds was any reference made to the 1959 plat, nor was there any express grant of an easement of way in the proposed streets as appears in the deed to W. J. Siravo, Inc.
In December 1960 the commissioner of public works of the city of Cranston submitted to the city council for its approval a plan proposing the consstruction of sewerage facilities within that city and the taking by eminent domain of designated rights and easements in certain strips and parcels of land, which included taking the easements in the lands of petitioners now under consideration. This plan subsequently was approved by the city council, and the taking was accomplished on January 24, 1961 by filing with the city clerk a plan, description, and statement of the rights and easements taken pursuant to the terms of the pertinent statute. The statement of taking reads, in part, as folllows: "That said Commissioner of Public Works in behalf of said City of Cranston desires to take by condemnation and takes and the same is taken by said City of Cranston by eminent domain, pursuant to the provisions of said Act, as amended, the perpetual right and easement to locate, lay, construct, build, operate, maintain, repair and renew a sewer or sewers and appurtenant structures and swer service or other connections for the purpose of collecting and conveying sewage; of such size and at such depths as said Commissioner of Public Works or said City may determine, together with the right to dispose of surplus spoil material for swerage construction purposes; and to make such constructions purposes; and to make such constructions as said Commissioner of Public Works or said City may require to protect and support such swer or sewers and appurtenant structures and swer service or other connections on, in, through, under, and along certain strips of land in said city of Cranston described by parcels designated as follows, namely: * * *."
There is in evidence also a plan of the taking upon which are delineated the portions of petitioners' tract in which the easement is to be taken, which discloses that such portions coincide substantially with the proposed street. In addition, the taking includes two strips of land each 25 feet in width, one of which extends northerly from the northern line of the proposed street to the cemetery, while the other extends easterly from the eastern line of said street to the shore of Randall's Pond. As delineated on these plans, the easement to be taken extends along the entire length of the westerly line of lot 2853 owned by petitioners.
In his decision the trial justice made several findings of fact and concluded therefrom, in substance, that the conveyances of the several lots abutting on Atwood avenue created private easements of way in the proposed street in favor of those lots; that the 1959 platting of the tract constituted an incipient dedication of the proposed street to the public; that the easement taken in the proposed street by respondent did not extinguish the private easements of way existing therein; that respondent's easement taken in the proposed street has a concurrent existence with the private easements of way therein existing; and that petitioners have residual rights to use the area in which respondent's easement was taken to an extent consistent *314 with the paramount right of respondent to use that area pursuant to the terms of the taking.
The petitioners contend that error inheres in these conclusions of the trial justice on several grounds, which contentions, in our opinion, raise two fundamental questions. The first is whether petitioners had any right or interest in the proposed street at the time it was taken by respondent for which they would be entitled to an award of more than mere nominal damages. The second question is whether the taking so deprived lot 2853 of ways of ingress and egress as to entitle petitioners to an award of severance damages therefor.
It is our opinion that the trial justice erred in finding that petitioners had at the time of respondent's taking no interest or right in the proposed street for which they would be entitled to an award of more than nominal damage. We agree with the finding of the trial justice that in conveying the lots lying between Atwood avenue and the proposed street petitioners established easements of way therein in favor of those lots. We cannot agree, however, with his conclusion that the proposed street had been offered for dedication as a public way by petitioners or that there had been an acceptance thereof by respondent. If we concede an incipient dedication, that is, an offer to dedicate, we are not persuaded from an examination of the record that there is therein proof of an acceptance of a dedication sufficient to meet the general view that the evidence of such an acceptance must be clear and convincing. Kniss v. Borough of Duquesne, 255 Pa. 417.
But we are unable to perceive that petitioners intended to make an incipient dedication of the proposed street by merely delineating it on an unrecorded plat. In this jurisdiction the platting of a tract of land into lots and the delineation thereon of streets and ways accompanied by a recording in the records of land evidence of said plat and a subsequent sale of lots on that plat has been held to establish an incipient dedication to the public of the streets delineated thereon. Marwell Construction Co. v. Mayor and Board of Aldermen, 61 R.I. 314; Parrillo v. Riccitelli, 84 R.I. 276. On the other hand, the sale of a platted lot with reference to the plat will, as between the grantor and the grantee thereof, give the latter an easement of way in the streets delineated upon the plat even though it be unrecorded. See Thaxter v. Turner, 17 R.I. 799, 24 A. 829.
In State v. Frank W. Coy Real Estate Co., 44 R.I. 357, this court said at page 362 concerning dedications of land to public uses: "The intention of the owner is to be ascertained from his acts and his declarations, as no particular mode of making a dedication is prescribed by the common law." We take the view, however, that there must be either words or conduct on the part of the owner that reasonably tend to demonstrate such an intention to dedicate. In DiCioccio v. Town of Wethersfield, 146 Conn. 474, the court noted its cognizance of the need for evidence on this point of substantial probative force when it said at page 479: "It is essential to a valid dedication that there be a manifested intent by the owner to dedicate the land in question for the use of the public, and an acceptance by the proper authorities or by the general public." In short, the existence of such an intent to dedicate will not be lightly presumed.
In this state the recordation of such plats in the records of land evidence with the consequent giving of notice to the public of the existence of the proposed streets and ways over the land so platted discloses the owner's intention to offer such streets to the public for use as ways. Such may be accepted either by way of public user or by official action to accept the same on behalf of the municipality. Briefly, the requisite intention to dedicate, in our opinion, is evidenced by the recordation of the *315 plat, which in law gives notice to the public of the contents thereof.
Were we to agree with the trial justice's conclusion that petitioners had prepared the 1959 plat for the purpose of submitting it to the city plan commission for approval of the subdivision therein set out, there is in this record nothing which is probative either of its recordation or of an approval thereof as a subdivision by the city plan commission. Under the provisions of G.L. 1956, § 45-23-7, the approval by the city plan commission of a proposed subdivision is a prerequisite to the acceptance by the recorder of deeds of a plat for recordation. Nowhere in the record is such an approval by the city plan commission disclosed. The state of the evidence here does not warrant a finding that petitioners had made a common-law dedication of the proposed street to the public or that an incipient dedication to the public resulted from the preparation of the 1959 plat. For this reason we cannot agree with the conclusion of the trial justice that petitioners here were estopped from denying a dedication, being of the opinion that the doctrine of estoppel as applied to the dedication of land to the public has application only where it is shown that such a dedication in fact was made.
It is our conclusion then that at the time of taking petitioners had certain rights and interests in the proposed street despite the existence of the private easements of passage therein appurtenant to the lots abutting on Atwood avenue. They could make such use of the land comprising the proposed street as would not be inconsistent with the paramount right of the owners of such easements of way to make a full use thereof for that purpose. This court has recognized that the owner of land upon which a right of way has been granted to another may himself make such use of the portion of the land so burdened as will not serve to impair or diminish an effective use thereof by the owner of the easement. Sharp v. Silva Realty Corp., 86 R.I. 276, 285; Darby v. Town of Coventry, 86 R.I. 478, 485. The owner of a servient estate may make use of the land so burdened with easements of passage as a way for his own purposes subject, of course, to the full use thereof as a way by the owner of the easement. Abney v. Twombly, 39 R.I. 304, 319.
The substantial nature of this residual right in the owner of the servient estate is made clear in Millson v. Laughlin, 217 Md. 576, 585, where the court said: "The owner of the dominant tenement is entitled to use the easement only in such manner as is fairly contemplated by his grant, whether expressed or implied, and the owner of the servient tenement is entitled to use and enjoy his property to the fullest extent consistent with the reasonably necessary use thereof by his neighbor in accordance with the terms and conditions of the grant." It seems clear that petitioners here had a right to use the land comprising the proposed street for purposes of their own subject only to the paramount right of the easements of way therein appurtenant to the lots abutting on Atwood avenue. By right they could make use of the proposed street as a way as well as for other purposes that would not impair the easements of way therein existing, conceding that they could not erect a structure thereon so as to obstruct the existing easements of way. They could and obviously did make use of it to reach and service such of their land as lies to the east of the proposed street. We are constrained to conclude then that petitioners had more than a mere naked fee in the lands comprising the proposed street and that the extent to which they could make use thereof consistent with the existing private easements of way is a question of fact. Darby v. Town of Coventry, supra.
It is our further opinion that error inhered in the denial by the trial justice of severance damages to petitioners by reason of their loss of access to lot *316 2853 as a result of the taking. While a denial of severance damages does not appear in the decision in express terms the clear implication thereof is that petitioners could under the easement have access to said lot 2853 and, therefore, there was no diminution in value so as to serve as the basis of an award for severance damages. In this regard we consider as significant the trial justice's statement: "In fact, the easement created into Siravo creates a greater restriction upon the so-called proposed street than does the easement taken by the respondent." It is obvious that he considered the easement taken by respondent to be capable of existing concurrently with the easement of way appurtenant to the Siravo lot, and, it follows, that respondent's easement was so limited in scope as to leave, in effect, the same right of petitioners to use the area included within the taking as they had prior to the taking thereof.
He viewed the easement taken by respondent for sewers as being of substantially limited scope, conferring on it only the right to lay pipes or conduits under the land so taken for the passage or flow of sewage but with no right to make any use of the surface of such land other than to temporarily obstruct it for the installation of pipes or for the making of any repairs thereto as may from time to time become necessary. In other words, the easement taken by respondent is construed as being subject in general to the easement of way appurtenant to the Siravo lot and so limited in its application as to leave petitioners with the right to use that land to which the easement applies for access to lot 2853 subject only to noninterference with respondent's right to obstruct such passage when it is necessary to make repairs to the sewer lines and in installation. With this we cannot agree. It is our opinion that the terms of respondent's taking are such as to work an extinguishment of the easements of way in the proposed street that are appurtenant to the lots abutting on Atwood avenue and to preclude any use of it by petitioners other than to make a mere permissive use thereof at the will of respondent.
The terms of the grant of an easement are subject to construction in the like manner as are the terms of a deed. In Waterman v. Waterman, 93 R.I. 344, 175 A.2d 291, this court, in speaking of the construction of written instruments which create easements, said at page 294: "It is true that where in a written instrument an easement of way is granted in express terms, the nature and extent of the easement thus established is to be determined primarily from the language used in the writing, and if the terms thereof are free from uncertainty and ambiguity, oral testimony is not admissible to explain the nature or extent of the easement granted. * * * However, this court has repeatedly taken the sound view that when the language employed in the grant of the easement is ambiguous or uncertain, it may properly resort to a consideration of `any concomitant circumstances which have a legitimate tendency to show the intention of the parties.'" The statement of the taking in the instant case, which in legal effect is equivalent to a grant of an easement in a deed, is obviously clear and certain not only as to the land to be taken in perpetuity but also as to the extent and the scope of the uses that may be made thereof in perpetuity under the easement.
It is our opinion that the statement of the taking as enacted by the city council is clear and unambiguous and therefore, as we noted in Waterman v. Waterman, supra, neither oral testimony nor extrinsic evidence will be received for the purpose of explaining the nature or the extent of the rights acquired thereunder. The language in the statement of taking as enacted discloses clearly the nature of the easement taken and the extent of its application, that being, in our opinion, an intention to acquire the exclusive right to use and occupy the strip taken.
*317 It is true that the easement here taken is not completely without limitation, it being limited clearly to a taking for purposes germane to the construction and maintenance of a portion of a sewer system. However, it is without material limitation as to the uses that may be made thereon pursuant thereto and may be used to whatever extent is reasonably necessary to give effect to the purpose of constructing and operating sewer facilities. See Sharp v. Silva Realty Corp., supra. In that case we said at page 285: "`It has been held that the rights of the owner of the easement are paramount, to the extent of the grant, to those of the owner of the soil, and it is an established principle that the unrestricted grant of an easement gives the grantee all such rights as are incident or necessary to the reasonable and proper enjoyment of the easement.'" It cannot reasonably be disputed that the taking in this case is anything but an unrestricted grant insofar as it relates to the construction and operation of a sewer system. It would not be necessary, however, in the instant circumstances to invoke the doctrine of implied secondary easements in order to give respondent the right to do all those things that are reasonably necessary to a full and complete enjoyment of the right granted in the easement. See First Baptist Society v. Wetherell, 34 R.I. 155. This because it is clear from an examination of the statement of taking as enacted by the city council that every right that might be necessary to a full and exclusive use of the land taken for the purpose of maintaining and operating a sewer system was granted therein in express terms.
In construing statutes providing for an exercise of the power of eminent domain, it is well settled that the rule of strict construction has application, both as to the amount of the property to be taken and the quantum of the estate or interest taken. Thomison v. Hillcrest Athletic Ass'n, 39 Del. 590. Under such rule it is ordinarily held that unless the legislation providing for a taking by eminent domain authorizes expressly the taking of a fee or discloses that the taking of a fee is necessary for the purposes of the easement, only a qualified fee or an easement is taken by such an exercise of the power of eminent domain. The statement of the taking in the instant case makes no pretense at authorizing the taking of a fee, and obviously the taking of a fee is not necessary to provide for the uses contemplated by the easement. It does contemplate, however, a taking of right and interest in the proposed street that is virtually plenary in nature.
It would serve no useful purpose to extend this opinion by quoting at length from the statement of taking enacted by the city council in order to buttress our view that it is so comprehensive as to leave petitioners here without any right of passage in the land to which the taking applied. We would note, however, that we are not being required to construe a grant which creates an unrestricted or undefined easement, in which situation the rule is that construction should not be used for the purpose of burdening the servient estate beyond the intention disclosed in the terms of the grant or, in the instant case, beyond the intention of the statement of taking. Matteodo v. Capaldi, 48 R.I. 312. The purpose of that rule is to prohibit the imposition of unreasonable burdens on a servient estate merely because the grantor, in creating the easement, employed words of generality.
The statement of the taking in the instant case, while comprehensive as to the extent of the use to be made of the land taken, is specific rather than indefinite. The conclusion is inescapable, in our opinion, that the rights taken deprive these petitioners of any right to the proposed street including a right to use it to attain access to lot 2853. That the *318 petitioners might be permitted to use the proposed street at the present time for the purpose of entering and leaving lot 2853 does not limit the respondent's right to bar such use whenever it may be deemed necessary to enjoy the full use of the easement taken. In our opinion, the very absence from the statement of the taking of any reservation of a right to the petitioners to cross or enter upon the proposed street for the purpose of having access to lot 2853 is persuasive of an intention to exclude them from access to the proposed street whenever in the opinion of the respondent such action is necessary to the enjoyment of its easement.
In each case the petitioners' exception to the decision is sustained, and each case is remitted to the superior court for a new trial on the issue of damages resulting from the taking in accordance with this opinion.
PAOLINO, J., not participating.