George HICKEY et al.

v.

TOWN OF BURRILLVILLE et al.

No. 97–121–Appeal.

Supreme Court of Rhode Island.

June 19, 1998.

Stephen E. Breggia, Providence, for Plaintiff.

Albert B. West, Edward P. Manning, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on April 14, 1998, pursuant to an order directing the parties to appear and to show cause why the issues raised by this appeal should not be summarily decided. George Hickey and his wife, Paula (the Hickeys), owners of Tuffy's Tavern in the town of Burrillville (town), appeal from a final judgment of the Superior Court that assessed at $20,600 the damages they incurred when the Sewer Commission of the Town of Burrillville acquired by condemnation certain portions of their business property in order to construct a sewage-pumping station and connecting sewer line. After hearing the oral arguments of counsel and examining the papers submitted in this case, we are of the opinion that cause has not been shown, and the issues will therefore be decided at this time.

In 1988 the Hickeys purchased Tuffy's Tavern and the 1.48 acres of land upon which it was located in the town of Burrillville for $100,000. On March 21, 1991, the town, acting through its sewer commission and pursuant to the power vested in it by the General Assembly,[1] acquired certain property rights

---

1. General Laws 1956 § 24–1–1, entitled "Authorization of condemnation," states that "Whenever er the city council of any city or the town council of any town shall determine that the public inter-

in the Hickeys' land in order to construct a sewage-pumping station and to lay sewer pipes. By condemnation the town acquired 3,100 square feet of the Hickeys' property in fee simple, a permanent easement with respect to another 5,410 square feet of the property to accommodate an underground access sewer line, and a temporary easement that entitled the town to use certain portions of the Hickeys' property adjacent to the permanent easement for a three-year period for the purpose of storing excavated material and construction equipment and to access the construction site. The permanent easement for the sewer line bisects the Hickeys' property and prevents them from accessing the rear portion of their lot, which is bounded by the Clear River. This rear portion of the Hickeys' property beyond the permanent easement constituted the majority of the lot's total area and was utilized by the patrons of Tuffy's Tavern for outdoor recreational activities.

In order to compensate the Hickeys for this taking, the town offered them $18,000, which was deposited in the registry of the Superior Court on February 2, 1991. The Hickeys rejected the town's $18,000 offer and on November 4, 1991, filed a petition in the Superior Court for Providence County, seeking an assessment of damages pursuant to G.L.1956 § 37–6–18.[2] Specifically the Hickeys sought damages for the value of the land to which the town acquired fee simple title,

the value of the permanent sewer-line easement that bisected their property, the rental value of the temporary taking, severance damages to the remaining parcel that resulted from the taking, damages for the complete denial of access to the rear portion of the lot located on the far side of the permanent sewer-line easement, and finally, compensation for the alleged removal of five trees from the permanent sewer-line easement area by agents of the town.

On January 23, 1996, a two-day bench trial commenced during which the trial justice heard testimony presented by the Hickeys' expert witness, Joseph Capaldi, and the town's chief expert witness, Thomas Sweeney. Both experts had independently assessed the damages incurred by the Hickeys and each sought to prove that his assessment of the Hickeys' damages was the more accurate determination. In the end the trial justice chose to adopt his own assessment by combining the information presented in each expert's testimony. As to the fee simple taking, the trial justice awarded the Hickeys $7,375. This figure was based upon comparable per-square-foot sales prices for similar properties that both parties had introduced at trial. Next the trial justice valued the permanent easement by first applying the comparable sales method to determine the value of the subject land and then granting a 10 percent fraction of that value to the Hick-

est and convenience makes necessary or advantageous the acquisition of land or other real property * * * it may proceed to acquire the same by the exercise of eminent domain * * *."

2. General Laws 1956 § 37–6–18, entitled "Petition for assessment of damages by jury," states in pertinent part,

"Any owner of * * * real property so taken, who cannot agree with the acquiring authority upon the price to be paid for his or her estate, right, or interest in land or other real property so taken and the appurtenant damage to the remainder, may * * * apply by petition to the superior court * * * for an assessment of damages * * *."

We note that this statutory cause of action relates only to an aggrieved property owner whose land has been taken by the *state* or one of its agents. The Hickeys' land was taken by a *town* agency, the Burrillville Sewer Commission, and accordingly the proper route for seeking judicial redress was pursuant to § 24–1–8, enti-

tled "Assessment of damages by court," which states:

"Any owner of, or person entitled to any estate or right in, or interested in any part of the real property so taken, who cannot agree with the city or town council upon the price to be paid for his or her estate * * * may * * * apply by petition to the superior court for the county in which the real property is situated, setting forth the taking of his or her land or estate or interest therein and praying for an assessment of damages by the court or by a jury."

The town itself even notified the Hickeys of this procedural route for seeking an assessment of damages in a letter dated February 2, 1991. It is important to note, however, that the Superior Court for Providence County did have jurisdiction over this action because the Hickeys' property was located in that county. Further, the Hickeys met each of the procedural conditions precedent to the exercise of jurisdiction over their case by the Superior Court.

eys. The trial justice reasoned that the Hickeys suffered relatively little damage as a result of the unrestricted permanent easement and were, in his estimation, only deprived of a mere 10 percent of their rights in that land. This methodology resulted in a damage award of $1,300 for the town's imposition of a permanent easement to some 5,410 square feet of the Hickeys' land.

In regard to the severance damages, or damages resulting to the remaining parcel as a result of the taking, the trial justice first set the pretaking value of the property at $165,000 by applying the comparable sales method. He then subtracted the value of the fee simple taking and the permanent easement from this pretaking value in order to determine the pretaking value of the remaining parcel ($165,000 minus $7,375 minus $1,300 equals $156,335). This value was then compared to the after-taking value of the remaining parcel, $148,500, and the severance damages were set at $7,835.

In order to compensate the Hickeys for the three-year easement that the town had acquired to some 6,800 square feet of the parcel, the trial justice awarded the Hickeys $0.25 per foot for the three-year easement and a total rental value of $4,083. In the end the fee simple taking, permanent easement, temporary easement, and severance damages were valued collectively at $20,600, and the Hickeys were awarded this amount minus the $18,000 that the town had previously deposited in the registry of the Superior Court.

As a final matter the trial justice rejected the Hickeys' claim for compensation relative to five trees previously located on the land subject to the permanent easement, which were allegedly cut down by agents of the town during the condemnation. In asserting a claim for the loss of their trees, the Hickeys had relied upon G.L.1956 § 34–20–1.[3] In rejecting this claim, the trial justice found no evidence in the record to support the Hick-

eys' allegation that agents of the town had in fact cut down the trees at issue. The trial justice also rejected the Hickeys' legal theory of recovery because he interpreted § 34–20–1 as allowing a cause of action only against those who cut down another's trees while trespassing upon another's land, and the town "was not a trespasser and was authorized to cut trees because the taking instrument allowed it unrestricted use of the permanent easement area."

On January 9, 1997, the trial justice denied the Hickeys' motion for a new trial or, in the alternative, to reopen judgment. The Hickeys now appeal.

## Assessment of Damages

In their appeal the Hickeys' first claim that the trial justice erroneously failed to consider that they are henceforth completely deprived of access to the entire rear of their property beyond the permanent sewer-line easement. In support of this argument the Hickeys contend that the trial justice should have considered the most injurious use of the permanent easement reasonably possible in assessing the damages inflicted by the town's condemnation action. If one properly considers the most injurious use which the town might make of the permanent sewer-line easement, reason the Hickeys, then the conclusion should follow that they were completely deprived of any beneficial use of the rear portion of their lot and should be compensated appropriately. The Hickeys assert further that a proper consideration of the most injurious use the town might make of the permanent easement would entitle them to greater compensation than the 10 percent of the subject property's value that the trial justice awarded them. We agree.

▮▮▮ Article I, section 16, of the Rhode Island Constitution provides that "[p]rivate property shall not be taken for public uses, without just compensation." Whenever private property is taken for a public use, there-

---

**3.** General Laws 1956 § 34–20–1, entitled "Liability for unauthorized cutting of trees or wood," provides that:

"Every person who shall cut, destroy, or carry away any tree, timber, wood or underwood whatsoever, lying or growing on the land of

any other person, without leave of the owner thereof, shall, for every such trespass, pay the party injured twice the value of any tree so cut, destroyed, or carried away; and for the wood or underwood, thrice the value thereof; to be recovered by civil action."

fore, the landowner receives in exchange the fair market value of the property at the time of the taking, "but not a penny more." *Nasco, Inc. v. Director of Public Works,* 116 R.I. 712, 721, 360 A.2d 871, 876 (1976). In determining just compensation, one must consider not only the value of the property that was taken but also any damages to that portion of the land that the original owner retains. *Capital Properties, Inc. v. State,* 636 A.2d 319, 323 (R.I.1994).

In order properly to determine the value of damages to which the Hickeys are entitled, we must first endeavor to discern the exact property interest the town claimed by condemnation. The answer lies exclusively within the four corners of the unambiguous takings instrument which is subject to construction in the same manner as the terms of a deed. *Vallone v. City of Cranston Department of Public Works,* 97 R.I. 248, 197 A.2d 310 (1964).

In this case the instrument by which the town of Burrillville reserved a permanent easement over some 5,410 square feet of the Hickeys' property failed to restrict the town's rights in that land in any way. Rather it reserved to the town the unrestricted use of the subject property in order to construct and operate a sewage-pumping station and connecting sewer lines.[4] This Court has held that "the very absence from the statement of the taking of any reservation of a right to the petitioners * * * is persuasive of an intention to exclude them from access * * * whenever in the opinion of the respondent such action is necessary to the enjoyment of its easement." *Vallone,* 97 R.I. at 261, 197 A.2d at 318.

This is true because

"[t]he right of the easement owner and the right of the landowner are not absolute, irrelative, and uncontrolled, but are so limited, each by the other, that there may be a due and reasonable enjoyment of both. It has been held that the rights of the

owner of the easement are paramount, to the extent of the grant, to those of the owner of the soil, and it is an established principle that the unrestricted grant of an easement gives the grantee all such rights as are incidental or necessary to the reasonable and proper enjoyment of the easement." 17 Am.Jur. *Easements* § 96 (1938). *See also* annot. 130 A.L.R. 768 (1941).

In *Levcowich v. Town of Westerly,* 492 A.2d 141 (R.I.1985), we confronted a circumstance nearly identical to the Hickeys' predicament. In that case the town of Westerly had taken a "permanent easement for the construction, maintenance and operation of a system of sewers" on land owned by the plaintiffs. *Id.* at 142. The easement in *Levcowich* was properly interpreted as an unrestricted reservation, and consequently the grantor was entitled to a determination of compensation in light of the most injurious method of construction reasonably possible. For, as we stated in *Levcowich,*

"[i]n short, in cases like this if compensation is to be just it must be measured by what the condemnor can do and not by what he intends to do, it being the rule that the damages are to be assessed on the *most injurious method* of construction that is reasonably possible. *North Carolina State Highway etc. Comm'n v. Black,* 239 N.C. 198, [79 S.E.2d 778]; 2 Lewis, Eminent Domain (3d ed.) § 713, pp. 1249–50. If as of the time of condemnation the condemnor has the power, even though not the intention, to destroy a right of access, the condemnee's damages are to be determined as if the right were destroyed." *Levcowich,* 492 A.2d at 144 (quoting *Sullivan v. Marcello,* 100 R.I. 241, 254, 214 A.2d 181, 188 (1965)).

Accordingly the Hickeys are entitled to compensation for both the permanent easement and the denial of access to their property beyond the permanent easement in

---

4. The instrument creating the permanent easement grants to the town

"all the rights and easements * * * which may be necessary for the original construction of said sewer or sewers and of said appurtenant structures and of said sewer service and other connections and of said embankments and other supports and similar structures and the operation, maintenance, repair and renewal of the same, are hereby taken in said parcels * * *."

light of the most injurious use that the town might make of its easement rights. Even though the trial justice did award the Hickeys 10 percent of the value of the land subject to the permanent easement, this determination was not properly made in light of the most injurious use standard. Indeed, the trial justice included no express reasoning in his written decision to support his determination that the Hickeys had retained 90 percent of the rights in the permanent easement property and failed to consider the unrestricted nature of the town's rights in that same property. Accordingly we find that the trial justice erred both in awarding the Hickeys only 10 percent of the value of the land subject to an unrestricted permanent easement and in denying the Hickeys' request for compensation for the denial of access to the rear portion of their lot beyond the permanent easement.

The Hickeys next claim that the trial justice erred in not utilizing the requisite comparable sales methodology in calculating the amount of damages. *See Capital Properties, Inc. v. State,* 636 A.2d 319 (R.I.1994). On this point we find that the Hickeys have ignored the plain import of the trial justice's written decision. In it the trial justice clearly indicated that he was applying the comparable sales method and specifically utilized a comparable land sale put forth by the town because it had "the most similar characteristics to the part taken here." Therefore, the Hickeys claim that the trial justice did not utilize the comparable sales method is unfounded, and we reject it.

The Hickeys further contend that the trial justice erred in failing to award damages as a result of the town's alleged actions in cutting down five trees located on the property to which the town acquired a permanent easement. In addressing this claim of the Hickeys, the trial justice found no credible evidence to support the Hickeys' assertion that any agent of the town had in fact cut down five trees on *that part of their property that* was subject to the permanent sewer-line easement. The trial justice further found that even if the town's agents had removed the trees, no action at law existed for the recovery of these alleged damages because

the statute the Hickeys had invoked, § 34–20–1, provided for recovery only in "situations where there has been trespassing and an unauthorized cutting of trees."

We disagree with this interpretation of § 34–20–1. The statute does not in any way condition recovery for an unauthorized cutting of trees upon proof that the wrongdoer was trespassing upon the trees' owner's land. An individual rightfully upon another's land may still be liable under § 34–20–1 if he or she cuts down the landowner's trees without permission. Despite the trial justice's erroneous interpretation of § 34–20–1, however, we conclude that the Hickeys are not entitled to any separate and distinct compensation for the alleged removal of five trees from the area of the permanent easement because the Hickeys' rights in those trees were already extinguished by the taking instrument that stated,

> "[T]here is included and taken the trees, bushes, and the like, any fences or other structures on, within or across each of the parcels or strips of land, the rights of way and other easements in land and estates, and abutting rights with the right in the Town of Burrillville to prevent the building of any other structures thereon." (Emphasis added.)

The town is therefore not only properly upon the land pursuant to the aforementioned permanent easement but has rights to the trees upon the subject property as well. Accordingly the Hickeys are not entitled to separate and distinct compensation for the alleged removal of five trees from the easement area. Rather the Hickeys' loss of their rights in the trees located within the area of the permanent easement should be considered in valuing the damages resulting from the town's condemnation action. After all, the Hickeys lost their rights in the trees upon the easement property as surely as they were deprived of their rights in the land that the town acquired in fee simple.

## Motion for a New Trial

The Hickeys' final claim of error is that the trial justice improperly denied their motion for a new trial or, in the alternative, to reopen judgment so that additional testi-

mony relating to the trees' value could be adduced. In a nonjury civil action in which the trial judge decides both the law and the facts, he or she may grant a new trial only if he or she finds a manifest error of law in the judgment entered or if newly discovered evidence that was not available at the first trial and is of sufficient importance to warrant a new trial comes to light. *Colvin v. Goldenberg*, 108 R.I. 198, 273 A.2d 663 (1971).

In this case, as heretofore noted, the trial justice's failure to consider the total deprivation of access to the rear portion of the Hickeys' lot constituted a manifest error of law. We further find that the trial justice's award of only 10 percent of property value for land to which the town acquired a permanent easement was erroneous because that minimal award failed to consider the unrestricted nature of the town's acquired interest in that property and further neglected to value the town's acquisition in light of the value of the trees and the bushes upon that same land.

Accordingly the Hickeys' appeal is sustained in part, and the final judgment from which they have appealed is vacated. The papers in this case are remanded to the Superior Court so that additional proceedings may commence in order to properly assess the damages the Hickeys incurred as a result of the town of Burrillville's condemnation action.