[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This matter came on for consideration before the Court at a jury waived trial.
 Findings of Fact
The parties were owners of adjoining parcels located off Main Street, in South Kingstown, Rhode Island. Susan R. Bowers and James W. Bowers were owners of a parcel which was set off from the street. Their parcel was privileged by a right-of-way 40 feet in width and extending from Main Street approximately 262.5 feet to the Bowers' property. The right-ofway is referred to on recorded plats as Watson Avenue, although it is not a public street. Julie R. Hopkins-DeSantis and David J. DeSantis are the fee simple owners of the property on the eastern half of the right-of-way, essentially 20 feet in width, stretching the entire length of Watson Avenue. Where the DeSantis property line meets the right-of-way, there is a stone wall with an opening of approximately 10½ feet.
Mr. Mrs. DeSantis have owned the property since September 1994. The right-of-way appears on various plat maps recorded in the South Kingstown Registry of Deeds. The earliest of these maps appears to be dated 1897 when the land was subdivided. Mr. Mrs. DeSantis have owned the property since September, 1994; the Bowers family has owned their 39 acre parcel since 1921. The right-of-way is first described in a deed recorded in 1921 as follows:
 Together with the right as appurtenant hereto for said grantee, her heirs and assigns, to pass and re-pass over and along said Watson Avenue on foot and with vehicles to and from hereby conveyed premises and the public highway. Reference is also made to "Plat of house lots belonging to Mrs. R.C. Watson, Wakefield, R.I. 1897" recorded in Land Evidence of said South Kingston, Book No. 34, page 11, showing location of said Watson Avenue. Deed of Hannah D. Tucker to Mary P.H. Robinson dated February 18, 1921, recorded in book 41 at page 198. (Def. Ex. K).
The conveyances to Mr. Mrs. DeSantis and Mr. Mrs. Bowers make reference to the right-of-way.
Although Mr. Mrs. Bowers have frontage on other streets, they regularly used the right-of-way for access to and from their property. Ms. Hopkins-DeSantis is an avid gardener, and soon after acquiring her property, commenced beautifying the grounds including those on the right-of-way. In September of 2000, Mr. Mrs. DeSantis planted four redwood trees on the right-of-way near the stone wall. Mr. Bowers wrote two letters to Mr. Mrs. DeSantis expressing his concern that the trees would encroach onto the roadway.[1] Mr. Mrs. DeSantis did not respond until after the second letter. A compromise was struck whereby a different type of tree was planted. Mr. Bowers offered to help pay for the new trees. Ms. Hopkins-DeSantis continued to install other plantings along the right-of-way.
In the spring of 2000, Mr. Mrs. Bowers again expressed their concern, desiring to keep the entire 40 foot width right-of-way clear. Although no party introduced the correspondence into evidence, Mr. 
Mrs. Bowers insist that the purpose of the correspondence in the fall of 2000 was to clear the right-of-way[2] and they continued to press for this clearance. As Mr. Bowers testified, it was his right to use the entire right-of-way.
Ms. Hopkins-DeSantis claims that she attempted to contact a landscaper in the spring of 2001. Although she attempted to contact him in early 2001, by August of 2001 she still had not heard from him. Ms. Hopkins-DeSantis admits that in July 2001, Mr. Bowers left a message offering to trim the overgrowth, and she received this message after a two-week vacation to California. Rather than returning the call, she then left for a second trip. On July 30, 2001, Mr. Bowers had sent a notice to prevent adverse possession to Mr. Mrs. DeSantis clearly displaying his heightened concern. Still not hearing from his neighbors, and not seeing Ms. Hopkins-DeSantis on the property, Mr. Bowers cleared portions of the right-of-way in August of 2001.
Mr. Bowers clear cut the forsythia, the wild blueberry, raspberry and blackberry bushes, and several trees bordering along the right-of-way. He left some plantings alone and admits that he did the trimming himself. Mr. Bowers testified that he took this action because he was attempting to limit the loss of the right-of-way to Mr. Mrs. DeSantis by adverse possession. Mr. Bowers was unable to clearly view the street at the end of the right-of-way, or view children who walked along the right-of-way. While on the traveled portion, the brush would scratch against the Bowers' vehicles. Mr. Bowers testified, "I cleared whatever was there" but did not recall removing the berry bushes, or specialty trees. Mr. 
Mrs. DeSantis presented testimony of Mr. Greene, who operates the Holly Ridge Nursery, and a landscape construction company. Mr. Greene prepared a number of estimates, including Exhibit 25, using the size, age and specimen type of plantings which was provided by Ms. Hopkins-DeSantis. He admitted that he never viewed the property.
Mr. Bowers conveyed his interest in the property to Mrs. Bowers prior to 2004. In June of 2004, Mrs. Bowers conveyed her interest in the property to another party. Mr. and Mrs. DeSantis seek three things by this litigation: 1) damages for the loss of horticulture; 2) a declaration of the rights of the respective parties to the right-of-way and a reformation[3] of the right of way; and 3) an injunction preventing the defendants from using the right-of-way except for passage.
 Discussion
Because Mr. Mrs. DeSantis never moved to substitute in the new owners of the property, this Court is left in an awkward position, and without all of the necessary parties before it. The Court cannot determine the interest of the respective owners of the property and right-of-way, when one of the owners is not present at the trial or a party to the suit. As the high court recently said in Meyer v. City ofNewport, 844 A.2d 148, 152 (2004):
 All parties who have an interest that would be affected by a declaration are indispensable and must be joined in a declaratory judgment action. A Court may not assume subject-matter jurisdiction over a declaratory-judgment action when a plaintiff fails to join all those necessary and indispensable parties who have an actual and essential interest that would be affected by the declaration. [citations and quotes omitted].
A declaratory judgment is discretionary in nature, R.I.G.L. § 9-30-6, particularly where the decree "would not terminate the uncertainty or controversy giving rise to the proceeding." Meyer, supra. Declaring the rights of persons who are not parties to the dispute would be improvident, hence this Court declines to do so. In the same, the Court will decline to reform the right-of-way grant or to issue injunctive relief. As Mr. and Mrs. Bowers no longer own the adjacent parcel or right-of-way, there is no threat of on-going harm established.
 The Right-of-Way
Mr. Mrs. Bowers were entitled to use the right-of-way. Not only were they given an express grant on their deed of December 12, 2000, but they repeatedly used the right-of-way and sought to protect their interest in it.
All that is necessary to establish the grantors' intent to dedicate a private right-of-way to the use of an owner of a lot is a recorded plat.Kotuby v. Robbins, 721 A.2d 881, 884 (R.I. 1998). In this case Mr. 
Mrs. Bowers also had express language in the deeds themselves. See alsoVallone v. City of Cranston, Department of Public Works, 97 R.I. 248, 255,197 A.2d 310, 314 (1964).
It is clear that Mr. Bowers' expressions of concern for protection of the right-of-way went unheeded. Mr. Mrs. DeSantis knew of the Bowers' concerns. Mr. Bowers at first objected to trees being planted near the stone wall, the trees were moved in the fall of 2000, and Mr. Bowers offered to help in these moves. Nevertheless, Mr. Mrs. DeSantis continued to plant more and more. When Mr. Bowers complained of the forsythia problem, Mr. Mrs. DeSantis did nothing. Instead of trimming, they ignored their neighbor's repeated telephone calls. Clearly, Mr. Mrs. DeSantis ignored the problem or intended to aggravate it, rather than addressing the situation. A simple telephone call and a neighborly discussion could have defused the situation.
Ms. Hopkins-DeSantis, who prides herself on her gardening ability, claims her delay in responding to her neighbor on her inability to procure the services of one landscaper. According to Ms. Hopkins-DeSantis, this landscaper failed to respond to her telephone calls from the spring through the mid-summer. No evidence was produced showing that Ms. Hopkins-DeSantis had procured the services of this landscaper, or had any communications with him whatsoever.[4] No evidence was offered to establish why Ms. Hopkins-DeSantis could not do this gardening herself. The angst was exacerbated by the DeSantis' leaving Rhode Island again and again, failing to trim the shrubbery from the roadway or even acknowledging receipt of Mr. Bowers' telephone calls.
While Mr. Ms. DeSantis ignored the repeated requests, Mr. Mrs. Bowers predictably grew upset. Given their past concern for the clearance of the right-of-way, their renewed concern was inevitable, if not planned. By August of 2001, it became reasonable for Mr. Mrs. Bowers to protect their property interest more aggressively. They did so in two meaningful ways: First, they issued a letter to prevent a hostile taking (Exhibit 26). When this produced no response, Mr. Bowers cleared the land himself.
In a number of cases, one of the few avenues to extinguish a right-of-way is to declare it abandoned. Jackvony v. Poncelet,584 A.2d 1112 (1991). Overgrowth of shrubbery may have provided significant ammunition to Mr. Ms. DeSantis to claim the right-of-way was abandoned. Mr. Bowers was concerned about losing the right-of-way, as expressed by his letter. By clearing the right-of-way, Mr. Bowers was not only maintaining it, but continuing to use it, and restore it to meet its intended purpose.
Several Rhode Island cases describe the extent which a right-of-way holder may use the right-of-way. In Vallone v. City of Cranston Dept. ofPublic Works, 97 R.I. 248, 197 A.2d 310 (1964) the court considered the extent of private owners to use property shown on a subdivision plat map as a street or right-of-way:
 [T]he owners of the property could make such use of the land comprising the proposed street as would not be inconsistent with the paramount right of the owners of such easements of way to make a full use thereof for that purpose. This Court has recognized that the owner of land upon which a right-of-way has been granted to another may himself make such use of the portion of land so burdened as will not serve to impair or diminish an effective use thereof by the owner of the easement. The owner of a servient estate may make use of the land so burdened with easements of passage as a way for his own purposes subject, of course, to the full use thereof as a way by the owner of the easement. . . .
 The substantial nature of this residual right to the owner servient estate is made clear in Nilson v. Laughlin, 217 Md. 576, 585, 142 A.2d 810, 814, ALR 2d, 731, where the court said: "The owner of the dominant tenement is entitled to use the easement only in such manner as is fairly contemplated by his grant, whether expressed or implied, and the owner of the servient tenement is entitled to use and enjoy his property to the fullest extent consistent with the reasonably necessary use thereof by his neighbor in accordance with the terms and conditions of the grant." Vallone, 197 A.2d at 315-316 [Citations deleted].
Our high court more recently stated:
 The right of the easement owner and the rights of the land owner are not absolute, irrelative, and not controlled, are so limited, each by the other, that there may be a due and reasonable enjoyment of both. It has been held that the rights of the owner of the easement are paramount, to the extent of the grant, to those of the owner of the soil, and it is an established principle that on restricted grant of an easement gives the grantee also rights as are incidental or necessary to the reasonable and proper enjoyment of the easement. Hickey v. Town of Burrillville, 713 A.2d 785 (R.I. 1998).
In this instance, Mr. Mrs. DeSantis knew they were at risk by placing plantings on the rightof-way. They also knew that Mr. Mrs. Bowers were attempting to have those removed. Mr. Mrs. Bowers, as holders of the right-of-way, had a paramount interest in the property. Mr. Bowers was attempting to clear and maintain the right-of-way for its intended use and usual use. The additional plantings on the 40 foot right-of-way only jeopardize this. While Mr. Bowers did not need to clear cut every plant, he did need to remove the shrubbery which was obstructing his view and scratching his motor vehicle.
 Damages
Mr. Mrs. DeSantis presented an estimate from a nursery with supporting testimony, indicating the cost of 62 plants. They failed to establish which plants were located in the rightof-way or which ones did not limit Mrs. Mrs. Bowers' use of the right-of-way. Accordingly, the Court will not award damages for the large shrubbery including the forsythia, holly and rhododendron or chestnut tree.
Mrs. DeSantis was the only one to testify that any of the plants were on the site. Mr. Bowers indicated that he saw no berry plants nearby. Mr. Greene, from the nursery, testified that the thistle and honeysuckle are native plants and the species selected by Mr. DeSantis are rarely sold. He indicated that the raspberry and blueberry plants regenerate quickly and spread. A chestnut tree was not on the first list, but was added later. Accordingly, the Court accepts the estimate for the yarrow, St. John's Wort and blueberry, and significantly discounts the values of the other plants. The Court awards $1600 for plants and $500 for labor. The Court notes that only small items will be planted and were elements of the damage award, and notes Ms. Hopkins-DeSantis' considerable skills in planting; a hobby which she readily enjoys.
 Exemplary Damages
Under the case of Palmisano v. Toth, 624 A.2d 314, 317 (1993):
 The party seeking punitive damages has the burden of producing evidence of such willfulness, recklessness or wickedness on the part of the party of fault, as amounts to criminality, for which the good of society and warning to the individual, or to be punished.
Mr. Bowers was attempting to protect his own property, and sought to resolve the situation with his neighbors first. The Court finds that he was not acting with the requisite willfulness, recklessness or wickedness and hence punitive damages are denied.
Mr. Mrs. DeSantis have also requested relief under R.I.G.L. § 34-20-1, which allows for double or triple damages for any person who "shall cut, destroy, or carry away any tree, timber, wood or underwood, whatsoever." The berry bushes and plants for which damages are being awarded were not trees, timber or wood. The American Heritage Dictionary of the English Language, 3rd ed., 1992, defines underwood as "shrubs and small trees, growing beneath taller trees; underbrush." Miriam-Webster defines underwood as synonymous with undergrowth, that is low growth on the floor of a forest including seedlings, saplings, shrubs and herbs. The plants which were destroyed were not wild, growing underneath the forest trees, but were cultivated vegetation. The plantings damaged were not shrubs but flowering plants and berry bushes. Hence, exemplary damages pursuant to the statute are not awarded.
 Conclusion
Partial judgment shall enter for the Plaintiff for the vegetation damage as indicated above pursuant to Count 4 of the Complaint, and damages of $2100 are awarded. Judgment shall enter for the Defendants on Counts 1, 2, 3, 5 and 6.
Counsel shall prepare an appropriate order consistent with this Decision.
[1] While not clear, it appears that Mr. Mrs. Bowers used a regular path of the 40 foot right-of-way daily for access by car. This left the rest of the right-of-way dormant.
[2] Earlier, Mr. Bowers had planted trees on the lot line to demark the 40 foot right-of-way.
[3] The high court has recently reiterated that "to warrant reformation the credibility of witnesses and the weight of evidence must be such as clearly to convince the Court without hesitancy of the truth of the precise at issue." Nunes v. Meadowbrook Development Co., Inc. 824 A.2d 421,425 (R.I. 2003), citing Vanderford v. Kattelle, 75 R.I. 130, 142,64 A.2d 483, 489 (1949).
[4] It was not credible that someone as focused and meticulous as Ms. Hopkins-DeSantis waited through the spring and summer to receive a response from a landscaper. Apparently, the landscaper never communicated at all. As the trial approached, the Mr. and Mrs. DeSantis were able to obtain two estimates from another landscaper, just two weeks before this matter was heard at arbitration.