DECISION
This matter is before the Court for decision following a bench trial which concluded with oral closing arguments on December 15, 2006. The pivotal issue to be determined in this controversy is whether the legal status of a way in Portsmouth, Rhode Island, identified as Selina Lane, is private or public.
 Facts and Travel
The plaintiffs, John E. Ashley and Cheryl A. Beach ("Plaintiffs"), own and reside at 60 Selina Way which appears on the Portsmouth Assessor's Plat 64 as Lot 20. On the sub-plan, the area is identified as Lot 2. The defendants, Kenneth and Mary Ellen Kehew ("Defendants") own and occupy the abutting property described as Lot 155 on Portsmouth Assessor's Plat 64 and Lot 1 on the sub-plan. Lot 20 was deeded to plaintiff John Ashley on July 21, 1982 by his sister Laure Ashley. The Lot was comprised of 7.51 acres, a residential dwelling, and Selina Lane in its entirety. In that same year, plaintiff John Ashley and his father, Franklyn Ashley instituted litigation against Laure Ashley concerning, in pertinent part, the ownership of the 7.51 acre lot and dwelling. Pursuant to a settlement agreement reached in 1986, Laure Ashley's attorney, Daniel V. McKinnon, was permitted to seek subdivision of the 7.51 acre parcel. Additionally, in consideration of legal services rendered, he was to receive the respective portion of property that Laure would have retained under the settlement agreement. Compellingly, the consent order entered into a 1986 terminating plaintiff John Ashley's action against his sister, Laure, contains a provision in which "John Ashley and Laure Ashley further agree as to the street so called to dedicate it to the town so as to make it public street." See Jt. Exh. 23. The order and agreement were recorded in the Portsmouth Land Evidence Records in November 1986, March 1988, and again in September 1993.
In 1991, McKinnon recorded an approved subdivision plan which divided Lot 20 into Lots 1 and 2. Lot 1, described as Tax Lot 155 is comprised of 5 acres, while Lot 2 contained the remaining 2.51 acres and included Selina Lane in its entirety. In June of 2001, McKinnon and the co-owner, John B. Harwood conveyed Lot 1 to Defendants with the deeded right "to use Selina Lane (as extended) for purpose of ingress and egress to the premise from East Main Road, a public way and for all lawful purposes." Plaintiffs claim that Defendants purported additional subdivision of Lot 1 into two lots with an additional dwelling is violative of the applicable covenants.
Attorney Laurent Rousseau, who represented McKinnon at the 1988 Portsmouth Planning Board hearing was called by Plaintiffs to testify in this matter. He stated that although he considered Selina Lane to be a private way, it also bore indicia of public use suitable for a subdivision development. Plaintiffs also called attorney Donato D'Andrea, an attorney with almost forty years of experience, who opined, based on his very detailed study of the land evidence records and other pertinent documents, that Selina Lane remained a private way. Attorney D'Andrea characterized the aforementioned consent order as an expression of "merely an intent to dedicate not a dedication." He also explained that Laure did not own the dominant estate and, therefore, could not release restrictions.
The third attorney to testify was Vernon Gorton, Jr. who held the position of city solicitor in Portsmouth at the time the Portsmouth Planning Board asked him to investigate the question of, and render an opinion upon, whether Selina Lane was a public road. Mr. Gorton conducted a very thorough review of land evidence records, court orders, subdivision plans, transcripts of Planning Board hearings, and other pertinent documents. Attorney Gorton's credible in court testimony was consistent with the opinion, and the underlying comprehensive analysis, which he furnished to the Portsmouth Planning Board on March 14, 2002.See Jt. Exh. 43. With respect to the 1986 consent order, Mr. Gorton concluded that it was:
 "difficult to imagine a more definitive declaration of one's intent to dedicate than to expressly set out in a document included into a court order. The order with the agreement attached was recorded in Portsmouth Land Evidence Records in March 31 1988 . . . and again on September 9, 1993 . . . indicating that there was no subsequent revocation of the intent to dedicate."
Mr. Gorton also consulted with Portsmouth's Postmaster, Bruce Whitehead, who informed him that the postal employees have delivered mail to Selina Lane residents "as far back as any present employee can remember." Since postal employees do not deliver mail to any private way residents unless a maintenance agreement is in place, the absence of such an agreement in this case and the uninterrupted delivery of mail further support a characterization of Selina Lane as a public way.
Documents contained in Exhibit 43, and referenced in Mr. Gorton's testimony, reveal that as early as 1976 the director of the town's Department of Public Works recommended to the Town Administrator that the "whole road" (Selina Lane) be repaired with four loads of gravel. In 1986, the town upgraded and paved Selina Lane pursuant to its pavement management program. From 1989 to 1991, an extension to Selina Lane was constructed in conformity with the rules, regulations, and construction standards for the town. The town approved the design of the extension, bonded it, inspected it, and approved the completed project. In 1992, the town placed speed limit[1] and slow children signs along side the road. In 1996, the town administrator, in a "road list" compilation provided to the Town Council, categorized Selina Lane as a public road rather than a "private road" or a road "in question." See Exh. 39.
The public status of Selina Lane and its dedication to the town was confirmed by the credible testimony of Portsmouth's Town Administrator, Robert Driscoll. Mr. Driscoll, formerly a practicing attorney, has served as Town Administrator since August of 1990. In October 2002, Mr. Driscoll, with reference to Defendant Kenneth Kehew's application for electrical service to the Selina Lane property, wrote to Narragansett Electric to inform it that Selina Lane was an accepted public road within the town of Portsmouth. See Exh. 47. Mr. Driscoll also possessed personal knowledge as far back as the 1950s, and stated that he never observed Selina Lane being designated as a private way. Additionally, he was a member of the Town Council in 1986 when it unanimously voted to pave Selina Lane at a cost of $20,000 to the town. He testified that the town has continuously treated Selina Lane as a public way — upgrading it, repairing it, paving it, and installing signage.
Plaintiffs' counsel, on behalf of his clients, asserted during closing remarks that "at the end of the day" the status of Selina Lane turns upon whether there existed an "intent to dedicate" Selina Lane as a public road. Plaintiffs acknowledge some use and improvement of the Lane but echo attorney D'Andrea's opinion that the Lane remained a private way. They also questioned Laure Ashley's authority to release the subdivision restrictions and her intent regarding dedication.
 Standard of Review
In a non-jury trial, "the justice sits as trier of fact as well as law." Hood v. Hawkins, 478 A.2d 181, 184 (R.I. 1984). "Consequently, she [or he] weighs and considers the evidence, passes upon credibility of the witnesses, and draws proper inferences." Id. "The task of determining the credibility of witnesses is peculiarly the function of the trial justice when sitting without a jury." Walton v. Baird,433 A.2d 963, 964 (R.I. 1981). "It is also the province of the trial justice to draw inferences from the testimony of witnesses. . . ."Id.; see also Rodriques v. Santos, 466 A.2d 306, 312 (R.I. 1983).
"In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon. . . ." See Super. Ct. R. Civ. P. Rule 52. The Rhode Island Supreme Court has held that in order to comply with this rule, the trial justice need not engage in extensive analysis and discussion. Eagle Elec. Co. v. Raymond ConstructionCo., 420 A.2d 60, 64-65 (R.I. 1980). Strict compliance with the requirements of Rule 52 is not required if a full understanding of the issues may be reached without the aid of separate findings.Id. at 64. Even brief findings and conclusions are sufficient as long as they address and resolve pertinent, controlling factual and legal issues. White v. LeClerc, 468 A.2d 289, 290 (R.I. 1983).
Furthermore, the Uniform Declaratory Judgment Act § 9-30-1 etseq., grants the Superior Court "power to declare rights, status, and other legal relations whether or not relief is or could be claimed." Section § 9-30-12 provides that the Uniform Declaratory Judgment Act should be "liberally construed and administered." This Court finds the Defendants request for such relief to be appropriate under the Uniform Declaratory Judgment Act.
 Analysis
Our Supreme Court has expressed a view that "that there must be either words or conduct on the part of the owner that reasonably tend to demonstrate such an intention to dedicate." Vallone v. City ofCranston, 97 R.I. 248, 255, 197 A.2d. 310, 314 (1964). "It is essential to a valid dedication that there be a manifested intent by the owner to dedicate the land in question for the use of the public, and an acceptance by the proper authorities or by the general public."Id. With respect to dedicatory intent, the Supreme Court has noted:
 "In a traditional subdivision plan, created in accordance with local regulations, land delineated as streets and roads on a subdivision map becomes public property upon the approval of the [local] plan commission. Thus, in this circumstance, the dedicatory intent of the owner is established as a matter of law. This, however, is not the only avenue by which a road becomes a public highway."
Newport Realty, Inc. v. Lynch, 878 A.2d 1021, 1033 (R.I. 2005). This court is convinced, based on the credible evidence and relevant land evidence documents, that the land owner unequivocally expressed an intent to dedicate the land by recording a subdivision plan that clearly delineated Selina Lane.
Having declared that the landowner had the requisite to dedicate Selina Lane, the court must now address the issue of acceptance by the public. This can be accomplished in one of two ways: acceptance of the streets by official action or public user. Newport Realty, Inc. v.Lynch, 878 A.2d 1021, 1033 (citing Robidoux v. Pellitier, 120 R.I. 425,433, 391 A.2d 1150, 1154 (1978)). With respect to the former method, our Supreme Court has noted "the placing of any street or street line upon the official map shall not in and of itself constitute or be deemed to constitute the opening or establishment of any street or the taking or acceptance of any land for street purposes." Mill Realty Assocs. v.Zoning Bd. of Review of Coventry, 721 A.2d 887, 891 (R.I. 1998). Rather, what is required is by "official action" on the "part of public authorities." Newport Realty, Inc., 878 A.2d at 1034.
In the instant case, as precisely delineated in Exhibit 43, and revealed by the record, the following actions took place:
 "1. Recordation of an agreement in which they obligate themselves to dedicate the road to the town `so as to make it a public street' (3 separate recordings between 1986 and 1993); 2. Positing to the planning board that the road is (sic) public road and requesting subdivision while acknowledging that such requests must be denied if the road is private; 3. Recording a plan delineating a street and deleting the notation shown on prior plans that it is to be considered private; 4. Constructing an extension to the street in accordance with rules, regulations, and construction standards for the town; 5. Taking advantage of the characterization of the road as a public street to accomplish a subdivision; 6. Allowing the town to upgrade the road from gravel to asphalt."
Clearly, much activity occurred beyond mere recordation to support a finding of acceptance of Selina Lane by the town. Despite the fact that the town was not obligated to do so, its Department of Public Works literally made Selina Lane into a paved way in 1986. During subsequent years the town approved construction of an extension in accordance with its own standards and continued to perform maintenance and repairs.
The credible, convincing, and abundant evidence leaves the Court to the inescapable conclusion that Selina Lane is, in fact and according to the law, a public way. Counsel for Defendants shall prepare a form of declaratory judgment in conformance with this opinion.
[1] Mr. Timothy Banks, who resides on Selina Lane, with his wife and nine children, testified that in the early 1990s he contacted Chief of Police Bailey in Portsmouth regarding the placement of signs regarding safety in the neighborhood. Chief Bailey complied, but expressed to Mr. Banks his uncertainty regarding the enforcement of the speed limit.