Edward F. GRADY, III

v.

The NARRAGANSETT ELECTRIC COMPANY d/b/a National Grid.

No. 2007–329–Appeal.

Supreme Court of Rhode Island.

Jan. 9, 2009.

Robert D. Wieck, Providence, for Plaintiff.

Robin L. Main, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

The plaintiff, Edward F. Grady, III, appeals from a Superior Court judgment in favor of the defendant, The Narragansett Electric Company,[1] with respect to a declaratory judgment action concerning that company's claimed easement over the plaintiff's property located in North Kingstown. The trial justice denied the plaintiff's request for declaratory relief; he determined that the plaintiff's development plans for the property would unreasonably interfere with the defendant's easement rights. The plaintiff filed a timely notice of appeal.

This case came before the Supreme Court on October 27, 2008 pursuant to an order directing the parties to show cause as to why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and examining the record and the memoranda filed by the parties, we are of the opinion that cause has not been shown. Because we hold that, pursuant to the express terms of the recorded document that cre-

---

1. The Narragansett Electric Company currently does business as "National Grid." In this opinion we shall frequently refer to the company simply as "Narragansett Electric."

ates the easement, the original easement granted to Narragansett Electric Lighting Company (the predecessor in interest of The Narragansett Electric Company) was freely assignable and also granted Narragansett Electric Lighting Company and its successors and assigns expansive rights to use the easement for electrical distribution purposes, we affirm the judgment of the Superior Court.

### Facts and Travel

On December 16, 2004, plaintiff purchased by warranty deed a parcel of land situated at 7760 Post Road in North Kingstown; said parcel of land is subject to easements of record. The defendant, Narragansett Electric, which claims an easement over a portion of plaintiff's Post Road parcel, is a public utility corporation organized pursuant to a special act of the General Assembly; it is currently in good standing under Rhode Island law.

The plaintiff, prior to purchasing the Post Road parcel, sought permission from Narragansett Electric to construct a car wash on the parcel; part of the proposed car wash would lie within Narragansett Electric's claimed easement. After Narragansett Electric declined to consent to his proposal, plaintiff brought a declaratory judgment action pursuant to the Uniform Declaratory Judgments Act, G.L. 1956 Chapter 30 of title 9, in the Superior Court for Washington County; plaintiff sought a declaration stating (1) that his proposed car wash would not interfere with defendant's use of its easement (count one) and (2) that defendant may access its easement only through the Sea View Railroad corridor and not laterally through Post Road (count two). A nonjury trial was held on November 6, 16, and 21, 2006.

To understand the origins and nature of the easement at issue in this case, it is necessary to examine certain pertinent historical facts. From early in the twentieth century until approximately 1920, the Sea View Railroad ("Railroad") operated a twenty-two mile trolley line running between the town of East Greenwich and the village of Wakefield in the town of South Kingstown. During the process of land acquisition by the Railroad, it acquired a sixty-six-foot wide tract of land that ran through the Babbitt Farm in the town of North Kingstown; that tract of land became known as the "Babbitt Corridor." A portion of the Babbitt Corridor makes up part of plaintiff's Post Road property.

At trial, Joseph Nottie, a title attorney, testified about his examination of the title for the Post Road parcel. On April 15, 1921, the Railroad's assets were sold at public auction after the Railroad had defaulted on its mortgage. Nathaniel T. Bacon acquired the Sea View Railroad Corridor (including the Babbitt Corridor) at that auction; a copy of the deed reflecting that acquisition was recorded in the Land Evidence Records of the town of North Kingstown in Book 52, pages 181–182. Subsequently, on August 29, 1921, Mr. Bacon granted an easement over the former Sea View Railroad Corridor to the Narragansett Electric Lighting Company. This easement was recorded on August 30, 1921 in the Land Evidence Records of the town of North Kingstown in Book 52, page 180.

The following language from that recorded document sets forth in pertinent part what Mr. Bacon granted to Narragansett Electric Lighting Company and (significantly) "its successors and assigns, forever" in August of 1921:

"An easement for the *perpetual right to erect, maintain, operate and patrol upon and over the right of way* and location formerly of the Sea View Railroad in the State of Rhode Island *following the general lines where the poles*

*and wires of said Grantee are now lo-cated* * * *.

"* * * For a more particular descrip-tion, reference may be had to a plan of 26 sheets entitled 'Plan of portion of Right of Way of the Sea View Railroad, to accompany deed of Nathaniel T. Ba-con to the Narragansett Electric Light-ing Company. Scale one hundred feet to the inch. August 1921.' which is made a part of this conveyance and such portion of said plan being recorded in the land records of the several towns, as pertain thereto, *this easement conveying a single or double line of poles or a single line of towers, or both or conduits underground with the wires or cables thereon or therein, which lines may be erected simultaneously or at any future time, and with other appliances and with necessary poles and guys or other supports* for the transmission and distri-bution of electric power * * *." (Em-phases added.)

By its terms, the easement also (1) grants Narragansett Electric Lighting Company the right to remove obstructions in or ad-jacent to the location and (2) reserves for the grantor the right of cultivation, provid-ed that such cultivation does not interfere with the rights granted by the easement. It is further stated that, "said rights and easements shall extend over the whole right of way and location of said Sea View Railroad Co., so called, as shown on said plan."

On November 29, 1927, Narragansett Electric Lighting Company conveyed its real property interests to United Electric Power Company by a common master deed in accordance with an amendment to its legislative charter.[2] The master deed

was recorded in the Land Evidence Rec-ords of the town of North Kingstown; it specifically identifies the August 29, 1921 easement from Mr. Bacon to Narragansett Electric Lighting Company. However, the master deed incorrectly identifies the page number of the book in which the easement is recorded in the town's Land Evidence Records. The master deed identifies the page number as 181, but the easement is actually recorded at page 180.

Michael DiNezza, who oversees defen-dant's real estate interests in Rhode Is-land, testified at trial that Jeffrey Campo-piano, an engineer working on behalf of plaintiff, contacted him in the Summer of 2004 with respect to the easement over the Post Road parcel and asked for Narragan-sett Electric's consent in connection with plaintiff's plan to build a car wash struc-ture on the Post Road parcel; the pro-posed car wash would partly involve land affected by the easement. Mr. DiNezza testified that he told Mr. Campopiano that Narragansett Electric did not allow struc-tures within its easements, but he nonethe-less invited him to send detailed plans for the company to review.

Both Mr. DiNezza and Mr. Campopiano testified that detailed plans for the car wash were sent to Narragansett Electric in October of 2004. (Notably, this oc-curred *prior* to plaintiff's purchase of the Post Road parcel in December of 2004.) Mr. DiNezza also testified that on the Oc-tober 2004 plans the easement was depict-ed as being only fifteen feet wide. He testified that he rechecked the twenty-six maps that are referenced in the easement, and he determined that the easement is actually sixty-six feet wide. Both Mr. Di-Nezza and Mr. Campopiano testified that,

---

**2.** In January of 1927, by special legislative act, Narragansett Electric Lighting Company was consolidated with several smaller utility companies so as to form United Electric Pow-

er Company. The latter company thereafter changed its name to The Narragansett Elec-tric Company.

in February of 2005, Mr. DiNezza responded to plaintiff regarding the October 2004 plans; he provided him with the above-mentioned information about the width of the easement, he requested that the plans be revised to show the correct width, and he indicated that the proposed structure should not lie within the easement.

Mr. DiNezza further testified that he and the President of Narragansett Electric met with plaintiff in March of 2005 about the easement issue and that in May of that year he met with plaintiff once again. In September of 2005, according to both Mr. DiNezza's and Mr. Campopiano's trial testimony, plaintiff submitted revised plans for the proposed car wash. Mr. DiNezza testified that, in November of 2005, he sent a letter to plaintiff stating that defendant did not consent to the proposed car wash. He further testified that at no time has Narragansett Electric ever consented to plaintiff's plans regarding the car wash that he proposed to build on the Post Road parcel.

Mr. DiNezza also testified concerning Narragansett Electric's present use of the easement. He acknowledged that, at the time of his testimony, there was only a single transmission line and a single utility pole located within the easement on plaintiff's Post Road parcel. However, he also testified that he did not believe that the easement limited the company to this single transmission line and utility pole; he explained that the easement permits defendant to erect towers and a double line of poles and to lay underground conduits. He also acknowledged that there is an existing building located on the Post Road parcel and that this building physically encroaches on the easement; however, he added that, to his knowledge, Narragansett Electric had not consented to the presence of that building within the easement. He further testified that he believed that Narragansett Electric's easement rights extended over the entire portion of the land once owned by Sea View Railroad.

Mr. Campopiano testified at trial about the specific details of the proposed car wash. According to the revised plans, a portion of the car wash tunnel and a paved entrance and exit to the car wash building would be located within the sixty-six-foot wide easement claimed by Narragansett Electric. He also testified that he told Mr. DiNezza that the proposed car wash would not interfere with Narragansett Electric's then-current use of the easement (viz., a single transmission line and utility pole). However, he did acknowledge that, as part of the car wash proposal, a septic tank, a textile filter, and a drainage field would be located within the easement.

Wesley Grant, a professional surveyor called by defendant, testified at trial that his survey of the Post Road parcel indicated that there was a sixty-six-foot wide easement over plaintiff's property. He testified that, in conducting this survey, he referred to maps found in the land evidence records of North Kingstown pertaining to the "Sea View easement."

Christopher Worme, an engineering planner for Narragansett Electric, testified at trial that he is responsible for long-range planning with respect to Narragansett Electric's electrical supply in Rhode Island. He testified that he believed that the easement would allow Narragansett Electric (1) to erect a single set of poles or a double set of poles; (2) to construct towers; and (3) to lay underground conduits. He also stated that the easement allowed Narragansett Electric to undertake such actions at any time. Mr. Worme also testified that he believed that the easement granted Narragansett Electric

the right to remove obstructions that might interfere with its easement rights.

After having heard several days of testimony and having been presented with numerous exhibits during the trial held in November of 2006, the trial justice ultimately issued a bench decision on April 17, 2007. In that decision, the trial justice reviewed the history and the proposed use of the Post Road parcel, and he examined the language (including the easement language) in the relevant deeds.

The trial justice found that Narragansett Electric Lighting Company conveyed its real property interests, including the easement at issue in this case, to Narragansett Electric by a common master deed. Further, the trial justice noted that the master deed was recorded in the Land Evidence Records of the town of North Kingstown and specifically identified the easement in question. The trial justice acknowledged that the deed incorrectly listed the page number for the recorded easement; he observed that it was "off by one page." However, the trial justice found that this erroneous page identification did not constitute a fatal flaw with respect to the assignment of the easement to Narragansett Electric because plaintiff had actual notice of the easement at the time he purchased the Post Road parcel. The trial justice also ruled that the easement was assignable because the majority of American jurisdictions, although not Rhode Island, have recognized that commercial easements in gross for utility purposes are assignable due to the fact that such easements serve a public interest. Further, the trial justice rejected plaintiff's assertion that the easement was limited to the existing line and utility pole; he predicated that ruling on the fact that the

easement language was broad and permitted Narragansett Electric to install many different structures on the easement and on the fact that the maps referred to in the deed indicated a sixty-six-foot wide easement.

The trial justice also rejected plaintiff's argument that Narragansett Electric had abandoned the easement. He further found that construction of plaintiff's proposed car wash would unreasonably interfere with Narragansett Electric's easement rights.

Finally, the trial justice declined to issue a declaratory judgment with respect to count 2,[3] finding that plaintiff had failed to address this issue at trial or in his post-trial submissions.

The plaintiff filed a timely notice of appeal.

On appeal, plaintiff contends that the trial justice erred as a matter of law in finding that the easement granted to Narragansett Electric Lighting Company in 1921 was assignable to Narragansett Electric. The plaintiff contends that, because this Court has never held that commercial easements in gross for utility purposes are assignable, the trial court erred as a matter of law in so ruling.

The plaintiff also argues that, even if the easement was freely assignable, Narragansett Electric does not have any easement rights on the Post Road parcel because the assignment of easement rights to Narragansett Electric was improperly recorded and "failed to provide [plaintiff] with constructive notice of the assignment[.]" Alternatively, plaintiff argues that the scope of the easement is limited to the existing line and utility pole on the Post Road

---

**3.** It will be recalled that, in count 2 of his complaint, plaintiff had sought a declaration that defendant may access its easement only through the Sea View Railroad corridor and not laterally through Post Road.

parcel and that, therefore, Narragansett Electric is entitled only to maintain a single transmission line where it is presently installed. Next, plaintiff argues that Narragansett Electric has abandoned its easement rights with respect to the portion of the easement occupied by the structure that is presently on it. Finally, plaintiff argues that his proposed car wash would be a reasonable use of the property and would not interfere with Narragansett Electric's current use of the easement; he further contends that reference to any possible future uses of the easement by Narragansett Electric involves the realm of speculation and, therefore, is not properly justiciable.

### Standard of Review

"This Court views deferentially the factual findings of a trial justice sitting in a nonjury case." *Manchester v. Pereira*, 926 A.2d 1005, 1011 (R.I.2007). In accordance with that principle, we "will not disturb the findings of a trial justice sitting without a jury unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence or unless the decision fails to do substantial justice between the parties." *Macera v. Cerra*, 789 A.2d 890, 892–93 (R.I.2002) (internal quotation marks omitted); *see also Nardone v. Ritacco*, 936 A.2d 200, 204 (R.I.2007). If, as we review the record, it becomes clear to us that "the record indicates that competent evidence supports the trial justice's findings, we shall not substitute our view of the evidence for his [or hers] even though a contrary conclusion could have been reached." *Tim Hennigan Co. v. Anthony A. Nunes, Inc.*, 437 A.2d 1355, 1357 (R.I. 1981); *see also Nardone*, 936 A.2d at 204.

In contrast to our deferential stance vis-à-vis factual findings made by a trial justice, we review in a *de novo* manner a trial justice's rulings concerning questions of law. *Manchester*, 926 A.2d at 1011; *see also Dellagrotta v. Dellagrotta*, 873 A.2d 101, 109 (R.I.2005).

Finally, with respect to the ultimate decision by a trial justice to grant or deny declaratory relief, our standard of review is deferential. *See, e.g., Hagenberg v. Avedisian*, 879 A.2d 436, 441 (R.I.2005) ("A decision to grant or deny declaratory or injunctive relief is addressed to the sound discretion of the trial justice and will not be disturbed on appeal unless the record demonstrates a clear abuse of discretion or the trial justice committed an error of law."); *Sullivan v. Chafee*, 703 A.2d 748, 751 (R.I.1997) ("The decision to grant or deny declaratory relief under the Uniform Declaratory Judgments Act is purely discretionary. * * * Accordingly, we review a declaratory decree * * * with an eye to whether the court abused its discretion, misinterpreted the applicable law, overlooked material facts, or otherwise exceeded its authority.").

### Analysis
### I
### Assignment of the Easement

The plaintiff first asserts that the trial justice erred as a matter of law in ruling that Narragansett Electric Lighting Company was entitled to assign its easement to The Narragansett Electric Company. The plaintiff points out that the easement at issue is an easement in gross, and he then relies upon the rule that easements in gross are personal easements and as such are not assignable.[4] On the basis of that

---

4. It is true that there is a general rule of ancient vintage to the effect that easements in gross, which are personal in nature, do not run with the land and are not assignable. *Cadwalader v. Bailey*, 17 R.I. 495, 499, 23 A.

rule, plaintiff argues that there never was a valid assignment of the easement at issue from Narragansett Electric Lighting Company to Narragansett Electric.

■ In our judgment, the instant case does not fall within the parameters of the common law rule prohibiting the assignment of easements in gross, even assuming the continuing viability of that rule in the commercial utility context.[5] Recourse to that rule would be inappropriate in this case because it is "trumped" by the clearly expressed intent of the parties at the time that the easement at issue came into being. *See O'Donovan v. McIntosh*, 728 A.2d 681, 683–85 (Me.1999) (holding that an easement in gross was assignable because the parties clearly expressed that intent through the language of the deed and listing numerous cases and treatises making

reference to exceptions to the general rule regarding assignability);[6] *see also, e.g., Miller v. Lutheran Conference & Camp Association*, 331 Pa. 241, 250, 200 A. 646, 651 (1938) ("There does not seem to be any reason why the law should prohibit the assignment of an easement in gross if the parties to its creation evidence their intention to make it assignable."); *Farmer's Marine Copper Works, Inc. v. City of Galveston*, 757 S.W.2d 148, 151 (Tex.App.1988) (holding that "the parties *may* create an assignable easement in gross through an express assignment provision") (emphasis in original); 5 Restatement of the Law of Property *Servitudes* § 491 at 3044 (1944) ("The alienability of noncommercial easements in gross is determined by the manner or the terms of their creation."); 4 Richard R. Powell, *Powell on Real Proper-*

20, 21–22 (1891); *see generally McAusland v. Carrier*, 880 A.2d 861, 863 (R.I.2005).

However, like so many other common law rules that came into being in a more agrarian and pre-industrial world, this general rule prohibiting assignments of easements in gross has been modified and has become more nuanced; many jurisdictions have by now explicitly upheld the assignability of easements in gross for commercial utility purposes. *See* 4 Richard R. Powell, *Powell on Real Property*, § 34.16 at 34–164–65 (2008) ("Easements in gross for railroads, for telephone and telegraph and electric power lines, for pipelines, for stream facilities, for water ditches and business structures have been held transferable by American courts almost without exception.").

This Court has not had occasion in recent times to consider the exception to the general rule that has been recognized by many modern appellate courts to the effect that commercial easements in gross for utility purposes are assignable.

In accordance with our usual policy of not opining with respect to issues about which we need not opine, we decline to express definitively today our view concerning the now-widely-recognized exception that classifies as assignable those easements in gross which serve commercial utility purposes. However, it should not be inferred that we disapprove

of the exception; it is simply that we need not reach that issue at this time in order to decide the case before us.

**5.** *See* footnote 4, *supra.*

**6.** In *O'Donovan v. McIntosh*, 728 A.2d 681 (Me.1999), the Supreme Judicial Court of Maine acknowledged the general rule of non-assignability with respect to easements in gross, but then noted that it had never applied that particular rule so as "to frustrate the parties' clear intent, as set forth in the deed, that the holder may assign the easement." *Id.* at 683. Similarly, we are aware of no precedent from this Court that would call for frustration of "the parties' clear intent" in a situation such as the one at bar. In addition, we are in accord with the following observation of the Maine court concerning the sound policy reasons that counsel deference to the parties' clear intent in this context:

"The conclusion that an easement in gross is assignable when the parties intend is consistent with our general policy favoring the free alienability of property. The alienability of an easement in gross promotes the free alienability of land, a general policy of property law." *Id.* at 684; *see also* 5 Restatement of the Law of Property *Servitudes* § 489, cmt. *a* at 3040 (1944).

*ty,* § 34.16 at 34–165 (2008) ("[T]here are many easements in gross that lack a predominately commercial character that have been held transferable on a showing that alienability was intended at the time of creation."); *see generally* Michael J. Polak, *O'Donovan v. McIntosh: Changing the Contours of Maine's Easement Law,* 52 Maine L.Rev. 447 (2000).

■■■■ This Court has held that it has a duty to "effectuate the intent of the parties in construing instruments purporting to create easements." *Mattos v. Seaton,* 839 A.2d 553, 557 (R.I.2004); *see also Carpenter v. Hanslin,* 900 A.2d 1136, 1147 (R.I. 2006). In construing the terms of the grant of an easement, those terms are "subject to construction in the like manner as are the terms of a deed." *Vallone v. City of Cranston, Department of Public Works,* 97 R.I. 248, 258, 197 A.2d 310, 316 (1964). Additionally, when the terms of an easement are clear and unambiguous, neither oral testimony nor extrinsic evidence will be received to explain the nature or extent of the rights acquired. *Waterman v. Waterman,* 93 R.I. 344, 349, 175 A.2d 291, 294 (1961).

The express language of the easement at issue in this case granted certain rights over the "right of way and location formerly of the Sea View Railroad" to "Narragansett Electric Lighting Company, *its successors and assigns, forever.*" (Emphasis added.) This language unambiguously expresses the intent of the parties—that intent being to allow Narragansett Electric Lighting Company to assign its easement rights. As the record indicates, such assignment took place on November 29, 1927, as reflected in the common master deed from Narragansett Electric Lighting Company to United Electric Power Company.[7] The common master deed specifically lists, as item number seventy-four, the easement granted by Nathaniel Bacon on August 29, 1921.[8]

Accordingly, even though we predicate our ruling on a legal rationale that differs from that of the trial justice[9], we are in full agreement with his conclusion that the easement rights at issue were assignable.

## II

### Recording Error

The plaintiff also argues that, even if this Court should hold that the easement rights were assignable, the error in listing the wrong page number of the easement in the common master deed should invalidate the assignment. Further, plaintiff argues that he did not have constructive notice of the assignment and that he therefore qualifies as a bona fide purchaser for value without notice and holds title to the Post Road parcel free of any easement rights that Narragansett Electric might otherwise have.

■■■■ The trial court properly rejected plaintiff's argument in this regard and found, based on trial testimony and plaintiff's own judicial admissions in his complaint, that plaintiff had *actual notice* that the Post Road parcel was subject to the easement and that, therefore, he was not a

---

7. *See* footnote 2, *supra.*

8. As previously noted, the common master deed incorrectly lists the easement as having been recorded in Book 52 at page 181 rather than page 180. The potential significance of this error will be discussed in the next section of this opinion.

9. *See, e.g., State v. Aponte,* 800 A.2d 420, 425 (R.I.2002) ("[I]n appropriate circumstances, we will exercise our prerogative to affirm a determination of a trial justice on grounds different from those enunciated in his or her decision.") (internal quotation marks omitted).

bona fide purchaser without notice. Both Jeffrey Campopiano (the engineer hired by plaintiff) and Michael DiNezza (a representative of Narragansett Electric) testified that, in October of 2004, they discussed plaintiff's plans to construct the proposed car wash on the Post Road parcel; it was noted at that time that the planned structure would lie partly within the easement. The plaintiff did not purchase the Post Road parcel until December 16, 2004—*i.e.*, two months *after* Mr. DiNezza advised Mr. Campopiano that Narragansett Electric had a policy of not allowing structures within its easements.

■■■ A conveyance is valid and binding against a purchaser of property if that purchaser has notice of the conveyance, despite a recording error. *Providence & Worcester Co. v. Blue Ribbon Beef Co.*, 463 A.2d 1313, 1318 (R.I.1983); *see also* G.L. 1956 § 34–11–1 ("Every conveyance of lands, tenements or hereditament absolutely, by way of mortgage, or on condition * * * shall be void unless made in writing duly signed * * * delivered, and recorded in the records of land evidence in the town or city * * * however, * * * those having notice thereof, shall be valid and binding though not acknowledged or recorded."); *Wild v. Constantini*, 415 Mass. 663, 615 N.E.2d 557, 560 (1993) ("[A] subsequent purchaser with actual notice is bound by such notice, even if the encumbrance is not set forth on the certificate."); 66 Am. Jur.2d *Records and Recording Laws* § 166 at 162 (2001) ("The view generally prevailing * * * is that if a purchaser has actually seen or heard of the record of a prior conveyance or mortgage, he or she is deemed a purchaser with actual notice although the record is fatally defective."); 28A Corpus Juris Secundum *Easements*

§ 134 at 338–39 (2008) ("One who purchases land subject to an easement, especially where it is expressly made so subject, or with knowledge or notice, actual, constructive or implied, that the property is burdened with an existing easement, takes the land subject to the easement.").

Since Mr. Campopiano, acting on plaintiff's behalf, contacted Narragansett Electric to seek to obtain its consent to the proposed car wash even before plaintiff purchased the Post Road parcel, it is clear from the record and from plaintiff's own judicial admissions[10] that he had actual notice of the easement and Narragansett Electric's easement rights with respect to the Post Road parcel. Additionally, notwithstanding the incorrect page number listed on the common master deed, plaintiff's title examiner, Mr. Grant, testified that he found the easement reference, determined the existence of the easement, and noted that the easement was referred to in plaintiff's deed. Since plaintiff had actual notice of the easement encumbering the Post Road parcel prior to purchasing the property, the mistaken page number referenced in the common master deed is not fatal to Narragansett Electric's ability to enforce its easement rights.

Accordingly, we perceive no basis for ruling that the trial justice erred when he found that plaintiff had actual notice of Narragansett Electric's easement rights on the Post Road parcel.

### III

### The Scope of the Easement

The plaintiff further argues that, even if this Court holds that the easement was properly assigned to Narragansett Electric, the scope of Narragansett Electric's

---

10. *See, e.g., Martin v. Lilly*, 505 A.2d 1156, 1161 (R.I.1986) ("A judicially admitted fact is conclusively established[.]"); *see also Crafford*

*Precision Products Co. v. Equilasers, Inc.*, 850 A.2d 958, 963 (R.I.2004).

easement rights would be quite exiguous. He contends that Narragansett Electric would be limited to installing, maintaining, and operating only a single transmission line over the easement area; he further asserts that said line would have to be located where the existing transmission line and pole are currently located.

 We have long adhered to the following basic principle:

"[W]here in a written instrument an easement of way is granted in express terms, the nature and extent of the easement thus established is to be determined primarily from the language used in the writing, and if the terms thereof are free from uncertainty and ambiguity, oral testimony is not admissible to explain the nature or extent of the easement grant." *Waterman*, 93 R.I. at 349, 175 A.2d at 294; *see also Richards v. Halder*, 853 A.2d 1206, 1210 (R.I.2004).[11]

 As the evidence and testimony at trial established, the express language of the easement makes reference to a "plan" of twenty-six maps; the eighth of those maps clearly shows that the width of the portion of the easement across the Post Road parcel is sixty-six feet. It is true that the language of the easement also reserves for the property owner a right of "cultivation" within the easement; however, this reserved right is itself limited by the explicit terms of the easement document, which states that the "cultivation * * * shall not interfere with the right granted herein, hereby conveyed[;] said rights and easements shall extend over the whole right of way and location of said Sea View Railroad Co., so called, as shown on

said plan." Additionally, we note that the easement also specifically grants the right to erect towers and double lines and to install conduits; the express grant of such rights is utterly inconsistent with plaintiff's proposed interpretation of the easement.

For these reasons, we perceive no basis for ruling that the trial justice clearly erred in making the determination that the scope of the easement was greater than the current use (*viz.*, a single transmission line and pole).

## IV

### Abandonment of the Easement

The plaintiff next argues that Narragansett Electric has abandoned its easement with respect to the portion of the easement presently occupied by an existing building since that building has been in existence on the Post Road parcel for decades without any objection having been voiced by Narragansett Electric.

 When determining whether easement rights have been abandoned, this Court has stated that "the question * * * is one of intention that must be determined by the facts of each case." *Jackvony v. Poncelet*, 584 A.2d 1112, 1114 (R.I. 1991). It has long been held that, in order to establish abandonment of an easement, "it is necessary to prove that the holder of the easement acted voluntarily and in such a decisive manner as to show an unequivocal intention to abandon the easement." *Id.*; *see also Steere v. Tiffany*, 13 R.I. 568, 571 (1882).

 During the trial, plaintiff failed to submit any evidence indicating how long

11. The converse of the principle quoted in the text is that, "when the language employed in the grant of the easement is ambiguous or uncertain, [it is proper to] resort to a consideration of any concomitant circumstances which have a legitimate tendency to show the

intention of the parties." *Waterman v. Waterman*, 93 R.I. 344, 349–50, 175 A.2d 291, 294 (1961) (internal quotation marks omitted). In the instant case, however, there is no ambiguity or uncertainty in the language of the easement.

the existing structure has encroached on the easement. Further, no testimony or evidence at trial showed that Narragansett Electric acted in the required "decisive manner" so as to demonstrate "an unequivocal intention to abandon" the portion of the easement currently occupied by the building. *See Jackvony*, 584 A.2d at 1114. Further, the specific language of the easement allows Narragansett Electric to remove any obstructions, if necessary, within the easement. Pursuant to that language, Narragansett Electric would be authorized to seek removal of such obstruction at some future time if it deemed such removal necessary for the carrying out of its functions as a utility.

Accordingly, we perceive no clear error in the trial justice's conclusion that there was insufficient evidence presented at trial to demonstrate an abandonment of a portion of the easement.

## V

### Reasonable Use

Finally, plaintiff contends that his proposed car wash would be a "reasonable use" of the property and that, therefore, construction of same should be allowed on the theory that it would not interfere with Narragansett Electric's current use of its easement. In support of this contention, plaintiff asserts that the proposed car wash structure would lie no closer to Narragansett Electric's current transmission line and utility pole than does the existing building. Further, plaintiff asserts that the trial justice's ruling that the proposed use would not be a reasonable use is inconsistent with the terms of the easement grant in light of the fact that the easement language reserves for the property owner a right of cultivation within the easement.

■ This Court has described the rights of an easement holder as follows:

"It is also well established [that t]he right of the easement owner and the right of the landowner are not absolute, irrelative, and uncontrolled, but are so limited, each by the other, that there may be a due and reasonable enjoyment of both. It has been held that the rights of the owner of the easement are paramount, to the extent of the grant, to those of the owner of the soil, and it is an established principle that the unrestricted grant of an easement gives the grantee all such rights as are incident or necessary to the reasonable and proper enjoyment of the easement." *Sharp v. Silva Realty Corp.*, 86 R.I. 276, 285, 134 A.2d 131, 136 (1957) (internal quotation marks omitted).

Determining whether a use within an easement is reasonable or unreasonable is a question of fact to be determined by the trier of fact. *Id.*

■ Upon our review of the trial testimony, we note that it is uncontested that the septic tank, textile filter, and drainage field of the proposed car wash would lie within the easement. Additionally, the car wash tunnel would also encroach upon the easement up to the point where the existing building is located. In view of those uncontested facts, we perceive no clear error in the trial justice's ruling that the plaintiff's proposed car wash would unreasonably interfere with Narragansett Electric's easement rights on the Post Road parcel.

### Conclusion

For the reasons set forth in this opinion, the judgment of the Superior Court is affirmed. The record may be remanded to the Superior Court.