**Supreme Court**

No. 2014-150-Appeal.
(WC 11-0466)

Rosario Turdo                    :

    v.                    :

 James Main.                    :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Rosario Turdo          :

v.              :

James Main.          :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.**  Rosario Turdo, the plaintiff, appeals from a March 10, 2014 judgment following a jury-waived trial in the Washington County Superior Court.  The trial justice entered judgment in favor of James Main, the defendant, on the plaintiff's breach of contract claim and also entered judgment in favor of the defendant on his counterclaim for conversion.  In addition, the plaintiff appeals from the May 5, 2014 denial of her motion for relief from the March 10, 2014 Superior Court judgment, which motion invoked Rule 60(b) of the Superior Court Rules of Civil Procedure.  This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After a close review of the record and careful consideration of the parties' arguments (both written and oral), we are satisfied that cause has not been shown and that this appeal may be decided at this time.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

On July 12, 2011, plaintiff filed a complaint alleging that defendant was indebted to her in the amount of $17,840. She alleged that she had "an agreement in regard to said sum which was signed on December 17, 2009 by James Main, the [d]efendant." On July 29, 2011,[1] Mr. Main filed a response and a counterclaim for $12,050. On August 16, 2013, prior to trial, the parties agreed to a "Statement of Undisputed Facts." The statement stipulated to the following facts: (1) the parties had been "involved in a 'dating'/romantic relationship from 2007 to 2010;" (2) the parties entered into numerous agreements involving the exchange of funds and services; (3) plaintiff sold a truck to defendant for $11,000; (4) defendant made payments to plaintiff with respect to the truck; (5) plaintiff "had [d]efendant return [the] vehicle to her on or about February 21, 2010 after contacting the police department of Westerly, Rhode Island;" and (6) plaintiff sold the truck in question for $10,000. In the same document the parties agreed that a contract signed by both parties on June 5, 2009 would be admitted as a full exhibit at trial. That handwritten contract reads, in its entirety, as follows:

> "Agreement between Rose Turdo [and] James Main
> "Ref: 2004 GMC Sierra 4X4 Black Pickup
> "VIN # 1GTHK29G74E292070
> "Rose Turdo to remain owner until final payment received by 12-1-09 - $500.00 received as down payment 6-5-09. $150.00 per week to be paid each Friday until $11,000 total received - First payment due 6-12-09.
> "All repairs - parts - maintenance - expenses are the responsibility of James Main -
> "Truck registration [and] Insurance [and] Title to remain under Rose Turdo with right to use. Upon default the truck remains the property of Rose Turdo without any reimbursement.

---

[1] The record includes a handwritten objection to the complaint by Mr. Main denying all allegations and expressing his wish to "counter sue," which is dated July 29, 2011. A more formal document containing Mr. Main's answer and counterclaim was filed on August 13, 2013.

"Title to be released with Lean [sic] until previous debt of $10,000 paid in full by 7-1-2010."

On August 27, 2013, a jury-waived trial was conducted. We relate below the salient aspects of what transpired at that trial.

**A**

**The Testimony at Trial**

**1. The Testimony of Rosario Turdo**

Rosario Turdo testified at trial that she began dating Mr. Main in April of 2007. She testified regarding a ledger she kept which reflected monies owed to her by Mr. Main and payments made to her by Mr. Main. It was Ms. Turdo's testimony on direct examination that she did not receive any payments from Mr. Main on the loan reflected in the above-referenced June 5, 2009 contract after November 9, 2009. She also testified that she had to have repairs costing $2,038.86 done on the truck before its sale; she added that Mr. Main's use of the truck for the purpose of towing certain items caused some of the damage which she had subsequently caused to be repaired.

On cross-examination, Ms. Turdo testified that Mr. Main did not pay under the June 5, 2009 contract "for any period of time." She was then specifically confronted with the fact that she had just testified that Mr. Main made no payments on the June 5, 2009 contract whereas her ledger reflected payments at least until December 3, 2009. She then conceded that Mr. Main did make payments under the June 5, 2009 contract and that, contrary to what she testified to on direct examination, he made regular payments up until December 11, 2009. She added that Mr. Main did pay her $1,600 after December 11, 2009, but she stated that said payment was not "another payment" on the contract at issue but rather was related to a visit made by his parents at which time they stayed at her home. She admitted during cross-examination that that payment

- 3 -

was not recorded on her ledger, which ledger she testified had ended before that point in time due to a new agreement between the parties on December 17, 2009. She went on to testify that, in addition to the $1,600 which Mr. Main paid her in December of 2009, he also assigned to her a debt of $800 from one "Ed Alore." It was her testimony that Mr. Main did not make any payments after the purported new agreement of December 17, 2009.

On cross-examination, Ms. Turdo went on to testify that she told Mr. Main that she wanted the truck back on January 18, 2010. She conceded that in February she went to the Westerly Police Department with respect to the truck because "[Mr. Main] was driving my truck under my registration, and my insurance, without my permission." She was asked if she told Mr. Main to return the truck "or [she] would pursue criminal charges," and she replied in the affirmative. She was then asked whether she knew that Mr. Main was on probation, and she again replied in the affirmative. She denied that Mr. Main had offered to pay the debt he owed her in full in February of 2010, and she stated that he returned the truck on "February 26thish."

When questioned during her surrebuttal testimony, Ms. Turdo was asked: "[Y]ou also told [Mr. Main] if he didn't give [the truck] back, you were going to say it was stolen?" She replied that she considered it to be stolen at that point. She was then asked: "You were basically threatening him?" Ms. Turdo's reply was: "I wanted my truck back. Yes, I wanted my truck."

### 2. The Testimony of James Main

James Main testified that it was his belief that he did not owe Ms. Turdo any money. He stated that Ms. Turdo wanted to enter into a new agreement on December 17, 2009 but that he refused to sign the new agreement. He also testified that Ms. Turdo intended to repossess the truck that day if he did not pay her $2,400. It was his understanding that the $1,600 he then paid her and the $800 debt which he agreed to assign to her were related to his debt for the truck. It

- 4 -

was his further testimony that he also commenced paying $200 a week. He added that he paid that $200 a week up until the time when Ms. Turdo repossessed the truck.

Mr. Main's testimony then turned to February 21, 2010, which he stated was the date when he received a phone call from Ms. Turdo in which she said that she wanted to repossess the truck. It was his testimony that he agreed to meet her at the Westerly Police Station. He added that, despite having agreed to meet at the Westerly Police Station, he actually went to the Hopkinton Police Station because they "knew both of us and our situation." He stated that he offered to "pay off the vehicle" and that Ms. Turdo's response was simply that "[s]he wanted the truck back." He then testified that Ms. Turdo said that she would report the truck stolen if he did not return it to her; he added that he returned the truck because he did not want any "legal problems." It was also Mr. Main's testimony that he was seeking damages pursuant to his counterclaim because Ms. Turdo wrongfully took his truck at the time when he was current on his required payments.

On cross-examination, Mr. Main conceded that he could not provide any proof for any of the payments which he made to Ms. Turdo that were not included in the ledger.

### 3. The Testimony of Victoria Bentley

Victoria Bentley testified that she was Mr. Main's stepmother. She testified that she was "a witness to a conversation" that took place on or near February 21, 2010 between Ms. Turdo and Mr. Main. She stated that Mr. Main told Ms. Turdo that he did not want to return the truck because he was "up to date on the payments." Ms. Bentley also testified that she told Mr. Main during the conversation that she would pay the balance due on the truck, which fact she heard him convey to Ms. Turdo.

**B**

**The Trial Justice's Decision**

The trial justice issued a written decision on February 26, 2014. She began by making extensive findings of fact. The trial justice found that there was a handwritten contract between the parties, which was executed on June 5, 2009, authorizing Mr. Main to purchase a truck from Ms. Turdo. The trial justice found that Mr. Main timely made the down payment and "in large part" complied with the periodic payment terms. According to the trial justice, in mid-December of 2009, plaintiff presented defendant with a handwritten ledger regarding monies he owed her and told him that she would repossess the truck if he did not pay the lump sum of $2,500 and increase his weekly payments for the truck from $150 to $200. The trial justice also found that plaintiff presented defendant with a document to that effect on December 17, 2009. Crucially, the trial justice noted that the December 17, 2009 document, which is the basis of plaintiff's complaint, was <u>never</u> <u>introduced</u> <u>at</u> <u>trial</u>. The trial justice then found that defendant did not execute any written agreement on December 17, 2009, although he did: (1) pay plaintiff $1,600; (2) assign to plaintiff an $800 debt he was owed; and (3) begin paying $200 a week.

According to the trial justice, the "credible testimony, supported by the documentary evidence of record" demonstrated that, when plaintiff tried to repossess the truck on February 21, 2010, defendant was current on his payments on his indebtedness with respect to the truck. The trial justice found that plaintiff demanded the return of the truck or she would report it as stolen to the police, knowing that defendant was on probation. The trial justice also found that, on the same February date, Ms. Turdo reported to the Westerly police that her ex-boyfriend would not return a truck after "she no longer permitted him to use it." Eventually, as the trial justice found,

- 6 -

in February of 2010, defendant returned the truck to plaintiff, who thereafter sold it for $10,000 in September of 2010.

With respect to witness credibility, the trial justice found plaintiff to be "angry and vindictive" and characterized her testimony as "spiteful." The trial justice stated that, "[w]hile it is not uncommon to observe some negative feelings between litigants, the disgust expressed by [p]laintiff about [d]efendant leaves the [c]ourt guessing what redeeming qualities [d]efendant had that attracted [p]laintiff to him in the first place." She further found plaintiff's testimony with respect to "debts incurred and payments received by [d]efendant" to "lack[] all credibility." The trial justice then detailed circumstances where plaintiff's testimony was inconsistent with a handwritten ledger on which she was relying to support her claim and where plaintiff's testimony on direct examination was inconsistent with her testimony on cross-examination. By contrast, the trial justice found that defendant "presented as calm, rational, and genuinely hurt by the tone and vitriol of [p]laintiff's testimony;" she added that defendant "appeared genuinely crestfallen during his testimony." The trial justice went on to state that "[d]efendant never dismissed the affection he had for [p]laintiff, he presented as a credible witness, and [p]laintiff simply did not." The trial justice also found Victoria Bentley's testimony to be credible.

With respect to plaintiff's breach of contract claim, the trial justice's conclusions of law were shaped by the fact that plaintiff sued under a purported December 17, 2009 contract, which defendant did not execute and which was never entered into evidence at trial. The trial justice stated that, consequently, there was no "mutuality of agreement" between plaintiff and defendant as to the purported December 17, 2009 contract. She also concluded that, at the time when plaintiff repossessed the truck, defendant was in compliance with the terms of the only contract between the parties, the June 5, 2009 contract. As such, the trial justice concluded that plaintiff

had failed to meet her burden of proving a "valid, enforceable agreement" as the basis for her breach of contract claim, and she indicated that judgment should enter for defendant on that claim.

Moving on to defendant's counterclaim, the trial justice reviewed the pertinent legal principles relative to the claims of conversion and then concluded that defendant had the required possessory interest in the truck at the time it was repossessed because he was current on his payments. She added that, for the same reason, plaintiff had no legal right to interfere with defendant's possessory interest. The trial justice then stated that plaintiff had repossessed the truck in a manner "designed to intimidate and harass [d]efendant" and that, consequently, defendant's act of turning over the truck was not voluntary. The trial justice then proceeded to state: "Accordingly, this Court finds that [p]laintiff appropriated the * * * truck for her own use without [d]efendant's consent and without legal right;" she added: "Defendant has established the tort of conversion and is entitled to damages." Finally, the trial justice set the amount for damages based on the value for which the truck was sold in September of 2010—viz., $10,000. A judgment to that effect was entered on March 10, 2014.

## C

### Post-Trial Motions

On March 28, 2014, plaintiff filed a motion for a new trial pursuant to Rule 59 of the Superior Court Rules of Civil Procedure. Subsequently, on April 23, 2014, she filed what she characterized as a "supplemental" motion for a new trial pursuant to Rule 60(b)(3) & (6) of the Superior Court Rules of Civil Procedure. (We note that Ms. Turdo provides no argument with respect to her Rule 59 motion on appeal; she confines her contentions to her Rule 60(b)

- 8 -

"supplemental" motion. Accordingly, we will recount only those facts that are relevant to plaintiff's Rule 60(b) motion.)

A hearing on plaintiff's motions was conducted on April 24, 2014. At the close of the hearing, the trial justice issued a bench decision. With respect to plaintiff's Rule 60(b) motion, the trial justice stated that the "rule permits a Court to relieve a party from a judgment under certain circumstances and upon such terms that are just." It was the trial justice's opinion that plaintiff's counsel was requesting a "do-over because the case was not tried in the manner that this new counsel[2] would have tried the case." She held that such a request, especially where she had found plaintiff to be "entirely lacking in credibility," did not meet the requirements of Rule 60(b)(6). Moreover, she held that any misrepresentations alleged by plaintiff were "nothing more than a request to reconsider this Court's determination of credibility;" she added that it was "just a last-ditch attempt to get a do-over after an unfavorable decision." Accordingly, she held that plaintiff was not entitled to relief under Rule 60(b)(3).

The trial justice's decision denying Ms. Turdo's motion for a new trial was entered as an order on May 5, 2014. Ms. Turdo timely appealed the judgment issued following the trial and the denial of her motion filed pursuant to Rule 60(b) of the Superior Court Rules of Civil Procedure.

## II

### Issues on Appeal

The plaintiff argues that the trial justice erred: (1) in determining that "there was no contract on December 17, 2009;" (2) in not awarding plaintiff damages under the June 5, 2009

---

[2] It is clear from the record that, at the hearing on her motion pursuant to Rule 60(b) of the Superior Court Rules of Civil Procedure, plaintiff was represented by an attorney who was different from the attorney who had represented her at trial; that new attorney entered her appearance on March 28, 2014.

contract; (3) in finding that defendant had a possessory interest in the truck; (4) in determining the amount of damages due to defendant on his conversion counterclaim; and (5) in denying plaintiff's Rule 60(b) motion for relief from the March 10, 2014 judgment.

## III

### Standard of Review

We have repeatedly stated that it is well established that the "factual findings of a trial justice sitting without a jury are accorded great weight and will not be disturbed unless the record shows that the findings clearly are wrong or the trial justice overlooked or misconceived material evidence." Wellington Condominium Association v. Wellington Cove Condominium Association, 68 A.3d 594, 599 (R.I. 2013) (quoting Hernandez v. JS Pallet Co., 41 A.3d 978, 982 (R.I. 2012)); see also Manchester v. Pereira, 926 A.2d 1005, 1011 (R.I. 2007). If it becomes clear to us, as we review the record, that "competent evidence supports the trial justice's findings, we shall not substitute our view of the evidence for [that of the trial justice] even though a contrary conclusion could have been reached." Wellington Condominium Association, 68 A.3d at 599 (internal quotation marks omitted); see also Grady v. Narragansett Electric Co., 962 A.2d 34, 41 (R.I. 2009).

We review questions of law on a de novo basis. Lamarque v. Centreville Savings Bank, 22 A.3d 1136, 1140 (R.I. 2011); see also Cathay Cathay, Inc. v. Vindalu, LLC, 962 A.2d 740, 745 (R.I. 2009). However, based on our review of the record and plaintiff's contentions on appeal, it is clear to us that no questions of law as to the original March 10, 2014 judgment have been raised in this case.

**Analysis**

**A**

**The Breach of Contract Claim**

The plaintiff alleges that, despite the fact that the December 17, 2009 contract which formed the basis of her complaint was not entered as an exhibit at trial, the trial justice erred in determining there was no contract because both parties testified regarding the contract. She adds that testimony reflected the fact that Mr. Main made at least some payments in accordance with the terms of the purported December 17, 2009 contract.

We begin by noting that plaintiff bore the burden of proving her breach of contract claim by a fair preponderance of the evidence. Campbell v. Walsh-Kaiser Co., 72 R.I. 358, 359-60, 51 A.2d 530, 531 (1947); see General Accident Insurance Co. of America v. American National Fireproofing, Inc., 716 A.2d 751, 757 (R.I. 1998); see also Gorman v. St. Raphael Academy, 853 A.2d 28, 37 (R.I. 2004). While we acknowledge that Mr. Main did testify that he made a lump-sum payment in December of 2009 and that he made larger payments after December 17, 2009, we nonetheless conclude, based on our review of the record, that the trial justice had competent evidence to support her finding that plaintiff failed to meet her burden of establishing the existence of a contract. See Wellington Condominium Association, 68 A.3d at 599.

We have stated that a contract requires "competent parties, subject matter, a legal consideration, mutuality of agreement, and mutuality of obligation." Lamoureux v. Burrillville Racing Association, 91 R.I. 94, 98, 161 A.2d 213, 215 (1960) (internal quotation marks omitted). The plaintiff inexplicably failed to produce at trial a copy of the purported December 17, 2009 contract. Additionally, as plaintiff recognizes in her filing before this Court, defendant testified

at trial that he refused to sign the December 17, 2009 document. He also stated that he gave Ms. Turdo a lump-sum payment in December of 2009 because she had threatened to repossess the truck—not because such a payment was required under the terms of the purported new December 17, 2009 contract. Without a copy of the alleged contract containing defendant's signature and in light of his testimony that he did not agree to its terms, we perceive no evidence in the record of a mutuality of agreement. Moreover, we must bear in mind that the trial justice found plaintiff's testimony with respect to debts owed to her by Mr. Main and monies she had received from him to "lack[] all credibility." As such, it is our opinion that the trial justice did not clearly err in making a factual determination that defendant did not execute a written agreement with plaintiff on December 17, 2009.[3]

## B

### The Counterclaim for Conversion

Ms. Turdo contends that the trial justice's finding in defendant's favor on his conversion counterclaim was in error because Mr. Main did not prove a possessory interest in the truck. She references the fact that the registration, title, and insurance on the truck remained in her name.

An action for conversion requires a plaintiff to establish that he or she "was in possession of the personalty, or entitled to possession of the personalty, at the time of conversion." Narragansett Electric Co. v. Carbone, 898 A.2d 87, 97 (R.I. 2006) (quoting Montecalvo v. Mandarelli, 682 A.2d 918, 928 (R.I. 1996)). The "gravamen of an action for conversion lies in

---

[3]    The plaintiff makes an additional argument that she should have been awarded damages under the June 5, 2009 contract. But plaintiff's complaint is based solely on the December 17, 2009 document. Consequently, despite plaintiff's contentions on appeal, there was no basis upon which the trial justice could award her damages on the June 5, 2009 contract. Moreover, it is also worth noting that the trial justice specifically found that Mr. Main was in compliance with the June 5, 2009 contract at the time the truck was repossessed.

the * * * taking [of the] personalty [of another party] without consent and exercising dominion over it inconsistent with the [other party's] right to possession." Fuscellaro v. Industrial National Co., 117 R.I. 558, 560, 368 A.2d 1227, 1230 (1977). The intentional exercise of dominion or control over another's chattel must "so seriously interfere[] with the right of another to control it that [the individual exercising dominion or control over the chattel] may justly be required to pay the other the full value of the chattel." Narragansett Electric Co., 898 A.2d at 97 (quoting Montecalvo, 682 A.2d at 928).

The June 5, 2009 contract, by its terms, granted Mr. Main the "right to use" the truck, regardless of the fact that the title, insurance, and registration were still in Ms. Turdo's name; the contract allowed him to possess and use the truck as long as he continued to make the required payments. Mr. Main testified that he was current on his payments for the truck at the time it was repossessed. Moreover, Victoria Bentley's testimony confirmed that Mr. Main expressed his belief that he was current in his payments to Ms. Turdo when she attempted to repossess the truck in February of 2010. In accordance with the just-referenced testimony, the trial justice found as a fact that defendant was current on his debt in February of 2010. She also found that Mr. Main did have a possessory interest at the time the truck was repossessed, which possessory interest existed pursuant to the June 5, 2009 contract. Moreover, she came to the conclusion, based upon her findings as to credibility, that Mr. Main returned the truck to plaintiff due to the threat of having it reported as stolen and that, therefore, his return of the truck was not a voluntary act. The trial justice proceeded to hold that plaintiff was liable for conversion. Upon our review of the record and the trial justice's decision, we are also of the opinion that plaintiff was liable for conversion when she took the truck in which defendant had a possessory interest without his consent and, by taking dominion over the truck, deprived him entirely of the use of

the truck.  See Narragansett Electric Co., 898 A.2d at 97; Fuscellaro, 117 R.I. at 560, 368 A.2d at 1230.  Our review has unearthed no error in the factual findings of the trial justice; and, in our judgment, those facts can lead to only one conclusion—that plaintiff converted the truck to her own use without legal entitlement.

Ms. Turdo further contends that, even if defendant prevails on his conversion counterclaim, defendant should not receive any damages due to the fact that the value of the truck had already been deducted from what Mr. Main owed her.  However, the purpose of the trial in this case was to make a determination as to the debts of the parties based on any contracts or agreements executed by the parties.  The trial justice found plaintiff's testimony regarding defendant's debt not to be credible.  The plaintiff has not presented us with any basis on which to question the trial justice's credibility findings in this regard.  See Wellington Condominium Association, 68 A.3d at 599.

The plaintiff also posits that defendant is not entitled to damages because he did not meet his burden of producing any evidence as to the value of the truck at the time it was repossessed in February of 2010.  We have stated that "the measure of damages for conversion is usually the value of the property at the time of its conversion, a matter susceptible of being proved by evidence of market value."  Jeffrey v. American Screw Co., 98 R.I. 286, 291, 201 A.2d 146, 150 (1964).  The trial justice in the instant case based her award on the market value of the truck in September of 2010 when the truck was sold.  Even though the trial justice based her damages award on the market value of the truck at a point in time after the conversion had taken place, she relied on our established method of calculating damages for a conversion using the market value of the chattel and, based on the evidence in this particular case, we cannot say that there was reversible error in the trial justice's damages determination.

We would also note that, on appeal, plaintiff's argument seems to be little more than an attempt to re-litigate this case. Her filings before this Court address only her disagreement with the factual findings of the trial justice. However, it is not our role to make new factual findings. Our role is confined to determining whether the trial justice committed clear error in her factual findings or misconceived or overlooked material evidence. See Wellington Condominium Association, 68 A.3d at 599. We are entirely unable to say that the trial justice in the instant case committed any such error. Accordingly, we affirm the trial justice's judgment in the instant case.

## C

### The Rule 60(b) Motion

The plaintiff next avers that, at the hearing on her post-trial Rule 60(b)(3) & (6) motion, she demonstrated that Mr. Main "outright lied" at the trial and that she should have been granted "relief for manifest injustice." Specifically, plaintiff contends that she demonstrated the following: (1) that Mr. Main stated at trial that he never agreed to the terms of the purported December 17, 2009 contract whereas a police report from the Hopkinton Police reflected the fact that defendant "went to the police with the December 17, 2009 agreement in hand and told the police he had typed up the agreement;" (2) that Mr. Main lied about the date on which he went to the police; (3) that Mr. Main returned the truck not because of threats by Ms. Turdo but, rather, due to the fact that the police advised him to return it; and (4) that Mr. Main had been convicted of committing four domestic offenses against Ms. Turdo, for which he received jail time and probation.

Rule 60(b)(3) provides that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for * * * [f]raud, misrepresentation, or other misconduct of an adverse party * * *." Rule

- 15 -

60(b)(6) allows for relief from a final judgment for "[a]ny other reason justifying relief from the operation of the judgment." It is our well-settled precedent that "[a] motion to vacate a judgment is left to the sound discretion of the trial justice and such a ruling will not be disturbed absent an abuse of discretion." Berman v. Sitrin, 101 A.3d 1251, 1260 (R.I. 2014) (quoting Malinou v. Seattle Savings Bank, 970 A.2d 6, 10 (R.I. 2009)). Moreover, our "review is limited to an examination of the decision to determine the correctness of the order granting or denying the motion, not the correctness of the original judgment." Id. (internal quotation marks omitted).

The trial justice in the instant case found no misrepresentations or misconduct on the part of the defendant that would allow for relief pursuant to Rule 60(b)(3). She further held that the plaintiff was not entitled to relief under Rule 60(b)(6) because that rule typically applies only in extraordinary circumstances and none were present in this case. See Allen ex rel. Allen v. South County Hospital, 945 A.2d 289, 297 (R.I. 2008) ("Rule 60(b)(6) was not intended to constitute a catchall and * * * circumstances must be extraordinary to justify relief.") (internal quotation marks omitted). It was the opinion of the trial justice that the plaintiff was simply looking for a "do-over." After our thorough review of the record in this case, we likewise are of the opinion that, in her Rule 60(b) motion and on appeal, the plaintiff appears to be seeking a "do-over" in view of the fact that she received an unfavorable result at trial. The misconduct or "lie[s]" which Ms. Turdo claims she demonstrated at the hearing on her Rule 60(b) motion did not sway the trial justice, and we cannot perceive any error in the trial justice's application of Rule 60(b) to the instant case. Therefore, we uphold the trial justice's dismissal of the plaintiff's Rule 60(b) motion.

**V**

**Conclusion**

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. We remand the record to that tribunal.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**        Rosario Turdo v. James Main.

**CASE NO:**        No. 2014-150-Appeal.
                    (WC 11-0466)

**COURT:**        Supreme Court

**DATE OPINION FILED:**  February 18, 2016

**JUSTICES:**        Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**        Associate Justice William P. Robinson III

**SOURCE OF APPEAL:**    Washington County Superior Court

**JUDGE FROM LOWER COURT**:

                    Associate Justice Kristin E. Rodgers

**ATTORNEYS ON APPEAL:**

                    For Plaintiff:   Stefanie DiMaio-Larivee, Esq.

                    For Defendant:  Matthew R. Reilly, Esq.
                        George J. Bauerle, III, Esq.